**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**
Southern

UNITED STATES OF AMERICA, 2007 SEP 27 P 2: 43

        PLAINTIFF,

        DEBRA P. HACKETT, CLK
        U.S. DISTRICT COURT     1:07CV863-MEF
        MIDDLE DISTRICT ALA

VS.               *     CASE NO.  1:03cr00219-MEF-VPM-1

KEVIN TURNER

        DEFENDANT.

---

## MEMORANDUM OF LAW IN SUPPORT OF 28 U.S.C.§ 2255 PETITION

Counsel for Movant respectfully submits this Memorandum of Law in support of Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody, under provisions of Title 28, United States Code, Section 2255.

## I. JURISDICTION

Title 28 U.S.C. §2255 is used to test the legality of a prisoner's detention if the remedy by motion is adequate and effective.  A 2255 motion is merely another step in the Defendant's criminal case and is favored over the traditional habeas corpus actions under 28 U.S.C., §2241 for cases challenging the validity of a conviction or sentencing.

In pertinent part, Title 28 U.S.C. §2255 states:

> A prisoner in custody under sentence of a court ...
> claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution, or
> laws of the United States, or that the court was without
> jurisdiction to impose such a sentence, or that the

> sentence was in excess of the maximum authorized by
> law, or is otherwise subject to collateral attack may move
> the court which imposed the sentence to vacate, set
> aside, or correct the sentence. (emphasis added.)

Defendant has an extra 90 days from the denial of his appeal to file the 2255 based on Eleventh Circuit and United States Supreme Court law. (See *Kaufmann v. United States*, 282 F.3d 1336, 1338 (11th Cir. 2002); and *Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072 (2003) ). In other words, the defendant has one year and ninety days to file the 2255 from the denial of the direct appeal.

## II. STATEMENT OF THE CASE[i]

On September 23, 2003 Kevin Turner was indicted in a seven count indictment in the Middle District of Alabama. Specifically he was charged with Sexual Exploitation of Children, 18 U.S.C. §2251(a) (Counts 1 and 2); (Counts 3-6) and activities contributing to or containing child pornography, 18 U.S.C. §2252(A) (Count 7). He was arrested on September 29, 2003. (D-2). Turner made an initial appearance and was released on bond. (D-4)

Turner was arraigned on October 8, 2003 at which time he entered a plea of not guilty. Turner filed a motion to suppress on November 13, 2003. (D-16)

On November 20, 2003 Turner filed a notice of intent to change plea. (D-19) An order issued on November 21, 2003 denying as moot his motion to extend time to file a motion to suppress.

---

[i]The docket entries will be cited (D-_) indicating docket number. The transcripts will be cited by date and page number. The transcripts are dated December 1, 2003, March 4, 2004, May 14, 2004, and August 26, 2006.

On December 1, 2003, Turner appeared for a change of plea hearing[2] before the Honorable Vanzetta P. McPherson. The plea agreement was filed on that date. (D-25)

The Magistrate Judge made a report and recommendation to the District Court Judge suggesting that the plea of guilty be accepted as to Counts 3-7 of the indictment. (D-27) Turner was released and continued on the same conditions as previously set out. (D-28)

On January 6, 2004 the District Court Judge accepted the plea of guilty and the adjudication of guilt as to Counts 3-7 of the indictment. The suppression motions were denied as moot. (D-29)

On February 6, 2004 the court entered an order granting a motion for a preliminary order of forfeiture. (D-32) On March 2, 2004 a warrant of arrest was issued for Kevin Turner. (D-36) A hearing was held on March 4, 2004 at which time Turner in open court filed a motion to withdraw his guilty plea.[3] (D-39) The Court entered an oral order allowing Turner to withdraw his plea of guilty as to Counts 3-7.

A detention hearing was held on March 9, 2004 at which time Turner was ordered detained. (D-44) This was based on statutory provisions rather than misconduct.

---

[2]As will be later addressed this plea was pursuant to 11(c)(1)(C). This plea was withdrawn and a second plea was entered.

[3]This matter will be addressed in detail to follow.

On May 3, 2004 Turner entered a second notice of intent to change plea. (D-55) A second plea agreement was filed on May 14, 2004. (D-60) On the same date Turner entered a change of plea of guilty as to Counts 3-6 and 7. (D-61) The Magistrate Judge made a report and recommendation suggesting that the plea be accepted. (D-62) On June 7, 2004 the District Court Judge accepted the guilty plea and the adjudication of guilt. (D-64)

On August 16, 2004 the District Court Judge entered an order directing Turner file in writing, no later than August 23, 2004, any *Blakely* objections that he may have. (D-66) A sentencing memorandum was filed by Turner's counsel on August 17, 2004. (D-67) On August 10, 2005 the government filed a motion to decrease the offense level by an extra one level for acceptance of responsibility. (D-81)

Sentencing was conducted on August 26, 2005 at which time Counts 1 and 2 were dismissed by the government. As to Counts 3, 4, 5, and 6, he received 360 months and on Count 7, 120 months all to be served concurrently; 5 years supervised release on Counts 3, 4, 5, and 6, and three years on Count 7. (D-84) The Court entered an oral order for acceptance of responsibility on the government's motion.

Turner at sentencing made an oral motion for downward departure. The court denied the motion. A timely notice of appeal was filed.

On September 27, 2005 James W. Parkman, III, moved to withdraw as counsel in this case and Attorney John M. Poti, was appointed. (D-96) The

4

motion was granted for Parkman to withdraw. (D-97)   On October 31, 2005, the undersigned entered an appearance as Appellate Counsel for Turner.  (D-100)

A timely notice of appeal was filed.

A brief issue was filed to the Eleventh Circuit Court of Appeals challenging the 360 month sentence.  On June 29, 2006 the Eleventh Circuit Court of Appeals affirmed the sentence.  This 28 U.S.C. §2255 follows.

### III. <u>STATEMENT OF THE FACTS</u>

### December 1, 2003 (Change of Plea)

On December 1, 2003 Turner appeared with his lawyer to enter a change of plea before the Honorable Vanzetta McPherson, United States Magistrate Judge. The Court conducted the plea colloquy determining that Turner was competent to enter a knowing and voluntary plea.  This was confirmed also by his lawyer. (12-1-03-p. 6)  Turner advised that he was undergoing psychological counseling and that he was taking Prozac, Lithium, and Seroquel. (12-1-03- p. 4)  The plea agreement was entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).[4] (12-1-03-p. 9)

The Court advised that if convicted after his plea of guilty to the offenses in Counts 3, 4, 5, and 6, the mandatory minimum was 5 years and that the Court must sentence him to at least 5 years. (12-1-03-p. 11) The Court also advised that it could sentence him to no more than 30 years.  The Court also advised that one of the provisions of the plea agreement was that the government had agreed that the

---

[4]This, of course, was a binding plea.

Court should sentence him to the minimum mandatory five years on each count **running concurrently with the other**. That would include a two year minimum on Count 7. (12-1-03-p. 12)

Turner entered a plea of guilty as to Counts 3, 4, 5,6 and 7. (12-1-03-p.14-15) The plea agreement contemplated a waiver of his right to appeal with the exception of ineffective assistance of counsel and prosecutorial misconduct. (12-1-03-p.15-16)

The Court found that he was competent and capable of entering an informed plea and that he knowing and voluntarily waived his rights. (12-1-03-p. 21)

### March 4, 2004 (Status Hearing)

Former counsel Jim Parkman on behalf of Turner at the detention hearing, and after consultation with AUSA Susan Redmond stated: "We've had discussions to try to resolve this. And at this time, I feel that the only way to resolve this matter at this moment on behalf of Kevin Turner, we're going to have to withdraw our pleas of guilty at this time and move forward toward trial and on the motion to suppress, also, that was previously filed." (3-04-04-p.15) The Court granted this request. (3-04-04-p.15)

### May 14, 2004 (Change of Plea)

The Court noted that Turner had entered a plea before and proceeded to the District Court level wherein he withdrew his plea and was now returning to reenter a plea. (12-14-04-pp.2-3) The defendant entered the plea before the Honorable Magistrate Judge. (12-14-04-p.3) The Court went through the entire plea

6

colloquy.  (12-14-04-p. 7)  The Court indicated that the plea was being entered pursuant to F.R.Cr.P. 11 (c)(1)(A).  (12-14-04-p.7)

The Court indicated that at the bottom of page 4 if the terms of the plea agreement were not accepted by the Court the defendant would be allowed to withdraw and proceed to trial.  (12-14-04-p. 8)  The defendant indicated that the government would file a motion for downward departure from the guidelines.  (12-14-04-pp.8-9)

The Court noted the gravamen of the plea agreement was **substantial assistance**.  (12-14-04-p.9)

Explanation of rights (12-13-04-p.10-18)  It was also noted that the presentence report had already been prepared.  (12-14-04-pp.18-19)[5]

Turner entered a plea of guilty to (Counts 3-7).  (12-14-04-pp.22-26)

**August 26, 2005 (Sentencing)**

The Court noted that there were objections to the presentence report and its obligation was to determine a reasonable sentence by consulting the United States Sentencing Guidelines as advisory and other factors pursuant to 18 U.S.C. §3353(a).  The Court also noted that the plea was pursuant to 11(c)(1)(A).  (8-26-05-p. 2)

---

[5]The original presentence report prepared by David Conoly was disclosed on January 27, 2004.  Written responses were due on February 9, 2004.  It is not clear when the report was provided the District Court.  The presentence report was updated May 19, 2005.

The Rule 11(c)(1)(A) plea required the government to file a three level downward adjustment for acceptance of responsibility and a three level downward adjustment for substantial assistance if it were determined that both were appropriate.  (8-26-05-p.3)

Defense Counsel Parkman indicated that the government agreed to file a three level downward adjustment pursuant to 5K.1.1 of the Sentencing Guidelines and that the right to appeal was waived except under circumstances which might be unforeseen.  For example the Court making an upward departure without a factual basis.  (8-26-05-p.4)

Defense Counsel Parkman objected to the suggestion by probation for an upward departure on the basis of 5K2.8 U.S.S.G.  The basis was pain and suffering of the victim due to his identity being exposed.  Attorney Parkman indicated that he did find only one circuit case that dealt with this.  *United States v. Blas*, 360 F.3d 1268 (11th Cir. 2004).  He also cited a Fifth Circuit case *United States v. Anderson*, 5 F.3d 795 (1993).  (8-26-05-pp.10-11)

Parkman on behalf of Turner indicated that the case law was specific on what is required for an increase under this provision.  He argued that the cases require sufficient psychological or behavioral function impairment.  (8-26-05-p.11) He argued that all of the cases required a statement from the victim and/or psychologist, neither which were present in the instant case.  (8-26-05-p-12)

The presentence report referenced a statement from the victim's mother.  Parkman argued that was insufficient under the law as it exists at present.  (8-26-

05-p.12) Further Parkman argued that you could not guess or speculate as to the heinousness and cruelness of the conduct to conclude psychological harm and the guidelines required that psychological harm must be greater in the instant case than suffered by most victims of abuse. (8-26-05-p.12) He argued that both the Eleventh Circuit and Fifth Circuit cases previously cited revealed substantially greater harm than that even speculated in the instant case. (8-26-05-pp.13-14)

The Probation Officer directed the Court to *United States v. Hersh*, 297 F.3d 1233 (11th Cir. 2002) in support where there was a ten level upward departure in a sexual case. (8-26-05-p.20)

The Probation Officer argued that this defendant "did not simply possess child pornography, did not simply produce or make child pornography, this defendant actually molested a 17 year old man, a boy, minor victim, who is unable to give consent being a minor, so he molested him. Unbeknownst to the victim the defendant video taped these. He even asked him before hand "do you mind if we make these tapes. To which the victim said no." The defendant continued.

Upon the victim saying he wanted to get out of the relationship, this defendant said "okay if you do, I will post these on the internet for your friends and family to receive them." The victim stayed in the relationship longer until - - approximately six months until he said "I'm out." "It was the next day, Your Honor, the defendant posted these images." They were accessed 53 times until AOL could pull them off.

The victim sought counsel, went to a local attorney, the attorney contacted

9

the district attorney, and so this victim did take steps to amend this situation. I think that does go to show that he was affected by the case, the severity of it. The family had to pay for his attorney to get involved. This was not free counsel they used. Based on all those factors, the Probation Officer's opinion is that a 300 month sentence is reasonable, whether the Court goes according to the guidelines and makes an upward departure or whether the Court goes under the statutory circumstances in the case. Thank you. (8-26-05-pp.21-22)

The Court indicated that in reviewing the case law it may consider as part of an upward departure or an upward variance based upon the post *Booker-FanFan* sentencing, it may consider an upward departure on the basis of the defendant's knowledge, conduct, and gratuitous infliction of injury to the minor victim in this case. The Court noted for that reason it felt an upward deviation, upward departure was warranted under either 5K2.8 or 5K2.0. The Court overruled the objection. (8-26-05-p.24)

Parkman objected to an enhancement of five levels pursuant to U.S.S.G. 2G2.2. (8-26-05-p.25) The objection dealt with whether or not there was distribution with pecuniary gain. (8-26-05-p.25) Parkman conceded that the Eleventh Circuit case law indicated that he was not on good footing to make the argument but there was split in other circuits on this issue. The case discussed was *United States v. Probel*, 214 F.3d 1285 (11th Cir. 2004). (8-26-05-p.26)

Parkman suggested that the scenario in the instant case, requesting that the defendant come back to him in exchange for exoneration of a debt was not

10

pecuniary gain. (8-26-05-p.27)

He argued that there was no pecuniary gain because nothing actually happened. In fact it worked in reverse as to what was supposed to have happened. Parkman submitted that reading the law strictly as it should be read, no benefit was received by Turner concerning the distribution of a picture of the victim. (8-26-05-p.27)

The Probation Officer interjected that the defendant, in putting a monetary value on the computers that he gave the victim with the suggestion that the victim could keep the computers as long as he stayed in and provided sexual acts and sexual favors to the defendant, was pecuniary gain. (8-26-05-p.30)

Parkman offered that the distribution of the pictures was not for pecuniary gain, but an attempt to have him come back and enter into a voluntary relationship. He argued the computers were a side item and had nothing to do with the distribution. The distribution was not "if you don't give me my money or bring my computers back I am going to put it on there." (8-26-05-p.32)

Parkman brought to the Courts attention that after receiving a letter from the victim's attorney, Turner did remove the photographs and wrote a letter of apology to the victim. (8-26-05-p.33) The District Court indicated that as to the 2G2.2 objection the Court could hardly see how the distribution of pictures would have the victim come back to a voluntary relationship. But the Court felt that the Eleventh Circuit case law (*Probel*) made it clear pecuniary or other gain is not required for

11

the enhancement to apply. (8-26-05-p.33)  The Court overruled the objection and applied the minimum guideline enhancement. (8-26-05-p.34)

Parkman argued given the Court's ruling on the upward departure that he should raise some issues with regard to a downward departure.  Specifically he referred to a troublesome youth impacted by things that had happened to him as a minor.  (8-26-05-pp.34-35).  Parkman also added consideration should be given to the fact that Turner voluntary sought treatment for conditions leading up to this offense conduct. (8-26-05-pp.35-36)

The Probation Officer in response to Parkman's request for a downward departure based on voluntary psychiatric counseling and his being the victim of similar conduct at a youthful age, indicated that the **PROTECT Act was still good law** despite the advisory nature of the guidelines.  He argued that the **PROTECT Act prohibited departures** for several factors unless they had been expressly addressed in the sentencing guidelines.  He stated that lack of guidance as a youth, similar circumstances, or post-rehabilitative efforts sought by the defendant were precluded under the Protect Act.  (8-26-05-p.40)

The Probation Officer argued that a downward departure may be prohibited by the guidelines and may be by the Protect Act.  (8-26-05-p.41)  In response Parkman indicated that the guidelines are not applicable and only advisory.  (8-26-05-p.41)

The Court indicated that it considered the defense request for a downward departure based on voluntary desire for mental health counseling and that he may

12

have suffered from an abusive upbringing which might have caused the conduct to have been an involuntary response on his part. The Court noted that the only addition to his finding that precluded a downward departure was contained in the presentence report as a history of Mr. Turner that he had turned into a sexual predator. Therefore, the Court denied any kind of departure. (8-26-05-p.42)

The Court adopted the actual findings under the guidelines of the Offense Level 32, Criminal History Score I, and the guideline range of 121-151 months. The supervised release for Counts 3-6 included five years, Count 7 was two to three years. He could be fined $17,500 to $175,000.

The Court found an upward departure warranted pursuant to 5K2.0 and 5K2.8 based on the defendant's conduct. (manipulative, unusually heinous, cruel, brutal and/or degrading toward the young victim). Further the Court found the guideline range should be base level 40 with the Criminal History Score I creating guidelines of 292-360 months and a fine range of $25,000 to $250,000. (8-26-05-p.43)

The Court noted that the victim did not want to testify. (8-26-05-p.44)

At was juncture the Court indicated that it would pronounce the sentence. There was not a motion by the government for the three level 5K1.1downward departure. (8-26-05-p.44)

The Court determined that Turner was a repeat sexual predator who had demonstrated a history of selecting, stalking, and destroying the lives of young children. The Court indicated that Turner was the reason our society must have

13

prisons. "I notice for many years that you suffered from this problem and have yet done nothing to stop this type of criminal and pedophile desires that you have with young boys." The Court indicated that the only reasonable sentence available after considering 18 U.S.C. §3553(a), an advisory guideline range, and the applicable statutory factors was a period of confinement of 360 months on Counts 3, 4, 5 and 6, and 120 months on Count 7, all to run concurrently. (8-26-05-p.45)

After stating the sentence, counsel to the defense objected to the pronouncement of sentence. (8-26-05-p.51) He argued that the objections had been previously noted with an additional objection. The defense argued that the 360 month sentence was maximum in this case. The facts in this case were all less egregious than those cited to the Court in the case law. Parkman argued that the sentence was unduly harsh and in violation of the Fourteenth and Fifteenth Amendments of the United States Constitution and was cruel and unusual punishment. (8-26-05-p.51) The Court noted that the objections were preserved. The Court responded that the sentence was reasonable. Further the Court noted that there was a waiver of the right to appeal but that did not include any upward departure pursuant to 5K2.0. The Court was confident that Parkman had reserved his right to appeal in that regard. (8-26-05-p.52)

## III. ISSUES RAISED ON DIRECT APPEAL
## ERRONEOUS SENTENCING ENHANCEMENTS; THIRTY YEAR SENTENCE UNREASONABLE; APPLICATION OF SENTENCING ENHANCEMENTS SIXTH AMENDMENT VIOLATION; AND

14

REASONABLENESS ERRONEOUS STANDARD.

## V. ARGUMENT

**DEFENDANT'S CONVICTION AND SENTENCE ARE SUBJECT TO COLLATERAL ATTACK AND HE IS ENTITLED TO RELIEF PURSUANT TO 28 U.S.C. SECTION 2255.**

## A. INTRODUCTION

Habeas Corpus has traditionally been regarded as governed by equitable principles. *Fay v. Noia*, 372 U.S. 391, 483, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963).

This case has exceptional circumstances and unforeseeable exigencies that were not available or developed until after sentencing and may now be resolved only through this Court's intervention pursuant to 28 U.S.C. §2255.

Due process mandates that a defendant be sentenced by a judge knowledgeable of all the **material facts**. In fact, the Supreme Court addressed the notion as follows:

> The result of the procedural irregularity is that the sentence rests on a foundation of confusion, misinformation and ignorance of acts virtually material to mitigation. If justice is to be done, a sentencing judge should know all the material facts.... Fair administration of justice demands that the sentencing judge will not act on surmise, misinformation and suspicion but will impose sentence with insight and understanding. *Harris v. United States*, 382 U.S. 160, 166, 865, Ct. 353, 15 L.Ed.2d 240 (1965).

15

In *Davis v. United States*, 417 U.S. 333 (1973), the Supreme Court permitted a collateral attack involving a claim that a judgment that was lawful when entered should be set aside because of a later development. The subsequent development in that case, however, was a change in the substantive law that established that the conduct for which petitioner had been convicted and sentenced was lawful.

## B. FIRST PLEA WAS ENFORCEABLE AND SHOULD NOT HAVE BEEN WITHDRAWN[6]

Pursuant to a written plea agreement for an 11(c)(1)(C) sentence of five years, Turner entered a guilty plea on December 1, 2003. (12-1-03, p. 9) The Honorable Vanzetta Penn McPherson handled the plea and recommended to the Honorable Mark Fuller the Courts acceptance of the guilty plea. (12-1-03,p. 21) The District Court accepted the plea and adjudicated the defendant guilty on January 6, 2004. (D-29) There was no deferment until the presentence report was prepared.

An initial presentence report was prepared and discosed on January 27, 2005. The suggested guildeines were base level 32, Criminal History Score I, and guidelines 121 to 151 months. This was obviously far in excess of the sentence agreed to by the parties of five years pursuant to 11(c)(1)(C).

The docket entry sheet reveals the 12-1-03 change of plea and the matter

---

[6]Turner argues that Parkman's failure to raise this argument, thereby exposing Turner to what was ultimately a 30 year sentence was ineffective assistance of counsel.

16

having been set for sentencing on March 2, 2004. The record becomes less clear after that entry. The defendant filed a motion to continue sentencing on March 1, 2004. (D-34) Sentencing was reset for May 24, 2004. (D-35) An arrest warrant was issued for Turner on March 2, 2004. (D-36) Oddly, the record reveals a March 4, 2004 "Status Conference" between the Court and the parties.

It appeared the Court was conducting the status hearing because Turner should have, but was not, remanded to custody pursuant to his guilty plea. (3-4-04, p. 2-3) While discussing the issue of bond, Attorney Parkman begins to speak of the 11(c)(1)(C) agreement in the past tense, although **no reference was made in the record or on the docket sheet to the Courts rejection of the 11(c)(1)(C) plea**. This is noted as follows:

Parkman: "Well, let me say to the Court this, that the plea agreement that we had in this case, if - - and I know the Court is certainly well aware of this and has read this. But if it would take notice of this, we did the plea pursuant to 11(c)(1)(C) in that we agreed that the sentencing in this case would be for a period of not longer than five years. It's also reserved to the defendant the right, if it's not granted or the Court does not see fit in granting that, that it does go back and the pleas are withdrawn. They're not going to be used against the defendant. And we're therefore set back to trial, exactly where we would have been to begin with.

So in this particular case, what's happening is we received a very substantial documentation from the sentencing officer in this case with the Sentencing Commission, and it had there quite a bit of **new law that I've never seen before**

17

**and new issues that I've never seen before**. So with that in mind in talking to the prosecutor in this case, we both agreed that the **best thing to do was to give me some more time to take a look at what has been happening in the Eleventh Circuit**, but more importantly, on issues that are not presented to the Eleventh Circuit, what's happening outside of that, to get some kind of feel for where the law was headed with regards to some of these arguments. **That's why the motion to continue the sentencing hearing was filed**." (3-4-04, pp. 3-4)

Parkman went further: "I think next comes the issue of the Court that in deciding what to do and deciding what the defense is going to do **after we take a look at the law** - for example, if we have that right to withdraw the plea and we do that, we really are back at square one - - - (3-4-04, p. 5) (emphasis added)

...Then taking into consideration the 11(c)(1)(C) issue that we have, certainly I hope the Court would take notice that counsel is trying to resolve this issue before the May 24 hearing and that way avoid having to go through a lengthy trial, that way having to resolve having to deal with a very lengthy situation in which the victim would have to be present. And we are trying and attempting to do that, and I think the Court could take notice of the fact that by his efforts in doing that, too, would show good faith on his part...." (3-4-04, p. 7)

The Court in reply stated: ..."I fully appreciate the ability for him to withdraw his guilty plea and the terms of the plea under 11(c)(1)(C), as you have discussed, and have no problem if you wish to discuss doing that. But I would certainly want you to discuss that with your client and with Ms. Redmond before

today so that we can consider how the case is going to proceed." (3-3-4-04, p. 8)

Then later the Court stated: "I want to see counsel briefly back in chambers. We're going to take just a momentary recess ... So that we can discuss what the nature of the discussions, if there are any discussions, under your plea agreement are because I know this case was set for sentencing earlier this week; and it is my understanding through no discussions with either side that there has been some difference of opinion, possible on the sentence and, thus, resulting in a continuance until the latter part of May. But I would like to find out what the nature of those discussions are, as far as reading a solution, not what y'all were discussing about any type of plea, but are we working towards getting the dispute worked out, or is it something that your client may indeed be interested in looking at withdrawing his plea of guilty."...The Court then said, "the recess would be about two minutes." (3-4-04, p. 14) **The recess lasted 35 minutes**. (3-4-04, p. 15)

The Court then questioned the parties on the record regarding a decision.

Mr. Parkman stated: "We've had discussions to try to resolve this. And at this time, I feel like that the only way to resolve this matter at this moment is that on behalf of Kevin Turner, we're going to have to withdraw our pleas of guilty at this time and move toward trial and on the motion to suppress also, that was previously filed." (3-4-04, p. 15)

The defendant agreed and the Court granted the motion. (3-4-04, p. 15)

**No where in the record does the Court state it would not approve the**

**11(c)(1)(C) plea agreement for five years**.  Turner's plea had been accepted and he had been adjudicated guilty.

Therefore, the plea should not have been withdrawn and should have been enforced.  If the Court disagrees with this position then Turner reserves the right to include Parkman's ill advised withdrawal of the plea as another claim of ineffective assistance of counsel.

## C. SECOND PLEA NOT KNOWING AND VOLUNTARY

### 1. Mental Capacity

Turner contends that his mental capacity at the time of the change of plea and sentencing was impaired to the extent he could not enter a knowing and voluntary plea.

The record in this case will show that Turner is bipolar.  After his bond was revoked and he was placed in jail, his condition was exacerbated by problems with the administration of his medication while in custody.  In fact, the Court postponed the sentencing for two weeks at one point to allow Turner to regain his composure and have his medicine straightened out.  This fact was referenced at Turner's sentencing.  (8-26-05, pp. 5-7)

Turner, as will be pointed out in a supplemental affidavit, was not mentally stable to understand the plea and/or enter a knowing and voluntary plea on May 14 2004.  A mental competency evaluation should have been sought by his counsel, the government, or the Court.  Turner's mental condition impaired his ability to enter and knowing and voluntary plea.  This is discussed in further detail under

20

Turner's ineffective assistance claim.

### 2. Breach of Agreement

After Turner's plea was withdrawn by former counsel there was a second plea negotiated. It is this plea that Turner contends was not knowing and voluntary. This is based on two factors. First, as noted by the Magistrate Judge, the gravamen of the plea was cooperation. (5-14-04, p. 9)

Interestingly, the Magistrate Judge advised the defendant that if the terms of the second plea agreement were not accepted by the Court the defendant would be allowed to withdraw and proceed to trial. (5-1404, p. 8) At the change of plea the government stated: "Further, we agree to file a motion for a three level downward departure pursuant to United States Sentencing Guidelines Section 5K1.1, and Federal Rules of Criminal Procedure 3553(a) for the defendant's substantial assistance to the United States in the investigation and prosecution of other violations of federal child pornography and obscenity laws."[7] (5-14-04, p. 12)

Even former counsel Parkman, in articulating the defense understanding of the agreement to the Court at the change of plea on May 14, 2004 stated:

---

[7]This language, upon which the defendant relied in entering his guilty plea on May 14, 2004 was unequivocal and did not have the caveat that any finding as to the value of the cooperation would have to be made. The defendant does acknowledge that the Court at the change of plea did interject language that the 5K1.1 motion was within the Government's discretion. (5-14-04, pp. 13-14) It is not surprising that Turner's plea resulted from confusion based on the mixed signals during the colloquy. Parkman also sounded certain that the government would file the 5K1.1 motion. (5-14-04, pp. 8-9); (8-26-05, p.4)

MR. PARKMAN: "What has happened in the meantime is that we are

expecting, although we understand that the Court does not have to accept it,

however, that's only based on the idea that the government doesn't do the

following, and that is, ask for substantial assistance points in this case.

We know based on my negotiations and discussions with the prosecutor what has

taken place in between the last time we were in court and what has happened how,

so we are under the understanding that is going to be maintained and offered to the

Court for a reduction for the substantial assistance, and we have already discussed

that. So what has happened in this plea agreement is we are not doing what we did

the last time by saying this is what the points are going to be, this is what the

sentence is going to be, what we are headed for is looking at the same presentence

investigation now with an eye towards what he has already done and what we

expect the government to do as a result of what he has done."    (5-14-04, pp.  8-9)

It is also obvious that the withdrawal provision of the agreement was that if

the government did not file the 5K1.1 motion, Turner could withdraw his

plea.[8]Parkman also noted at sentencing: "One is they did agree to file a motion for

a three level downward departure fo 5K1.1, ..."  (8-26-05, p.  4)

It is crystal clear that the government stated, and the defendant understood

he would receive a 5K1.1 motion from the government with the understanding the

same could be accepted or rejected by the Court.

---

[8]Another claim of ineffective assistance of counsel is Parkman's failure to move
to withdraw the second plea based on this understanding and agreement.

The plea was entered pursuant to the provisions of 11(c)(1)(A) and the Court stated: At the bottom of page four it says if the terms of the plea agreement are not accepted by the Court the defendant will be allowed to withdraw...his plea and proceed to trial, is that the agreement? Mr. Parkman: Yes, ma'am. (5-14-04, pp. 7-8)

It is obvious from a review of the record and the sentencing transcript that the government did not file a 5K1.1 motion nor a Rule 35 motion for substantial assistance. Turner relied on this being done in entering his guilty plea. As a result Turner did not enter a knowing and voluntary plea. Further, as will be later argued, Turner's former counsel was in effective for failing to pursue this breach of agreement by the government or argue the same at his sentencing.

The government should have been required to specifically perform this portion of the plea agreement as articulated to the Court on May 14, 2004. In *Re Arnett*, 804 F.2D 1200 (11th Cir. 1986).

Turner submits he assisted law enforcement in providing useful information during a proffer. Turner's cooperation was in exchange for what he believed would be leniency on the government's part and a motion to reduce sentence.

This never occurred. Turner contends the government breached its agreement by failing to recognize his substantial assistance and motion for a downward departure. Turner will later argue as part of his ineffective assistance claim that Parkman should have argued this at sentencing in mitigation of sentence.

23

Turner has documented his efforts in an affidavit that will later be filed to supplement his 2255 under separate cover and under seal. He will also outline his understanding of the agreement with the government. Despite Turner's cooperation he was not the recipient of any reward from the government. Turner's second plea was contingent on his cooperation and the credit for his cooperation.

Turner contends that he did not enter a knowing and voluntary plea and that as a result he should be allowed to withdraw the plea and proceed to trial. In the alternative he argues that the government should be required to specifically perform regarding recognition of his cooperation.

The Supreme Court in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495 (1971), carefully provided an analysis of the plea bargaining process and attendant safeguards. It held that the plea-bargaining process must be

> "[A]ttended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, supra, 15 404 U.S. 262.

"In determining what is 'reasonably due' a defendant '[t]he dispositive question ... is what the parties to the plea agreement reasonably understand to be the terms of the agreement.'" *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979); *Paradiso v. United States*, 689 F.2d 28 (2d Cir. 1982); cert. denied,

24

103 S.Ct. 752 (1983). See also, Johnson v. Beto, 466 F.2d 478 (5ᵗʰ Cir. 1972);

*United States v. Crusco*, 536 F.2d 21 (3ʳᵈ Cir. 1987). Those safeguards are

necessary because:

> "the plea is more than an admission of past
> conduct; it is the defendant's consent that
> judgement of conviction may be entered without a
> trial - a waiver of his right to trial before a jury or
> a judge. Waivers of constitutional rights not only
> must be voluntary but must be knowing, intelligent
> acts done with sufficient awareness of the relevant
> circumstances and likely consequences."

*Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463 (1970); see also,

*United States v. French*, 719 F.2d 387 (11ᵗʰ Cir. 1983), cert. denied, 466 U.S.

960, 104 S.Ct. 2174 (1984).

For a guilty plea to be voluntary, it must be "entered by one fully aware of

the direct consequences, including the actual value of any commitments made to

him by the Court, prosecutor **or his own counsel** ..." *Brady*, supra, 397 U.S. at

755. (emphasis added)

"A plea-bargain agreement is enforceable, and ... failure to comply with its

terms can render a defendant's plea involuntary and thereby undermine the

constitutional validity of a conviction based upon the plea." *United States v.*

*Corsentino*, 685 F.2d 48 (2d Cir. 1982).

The interests of justice and standard of good faith in negotiating plea

bargains require reversal where a plea bargain is breached. *United States v.*

*Valencia-Lucina*, 985 F.2d 758 (5ᵗʰ Cir. 1993).

The Seventh Circuit in *United States v. D'Iguillont*, 979 F.2d 612 (7th Cir. 1992) held that to establish plain error, the Movant must show that but for the breach of the plea agreement his sentence would have been different. The Court noted that the Movant was free to file a collateral proceeding challenging ineffective assistance of counsel.

In the case at bar, Turner's lack of understanding that he would receive a 360 month sentence and absent credit for his assistance, prior to entering his plea, rendered his plea involuntary and unknowing. As a result, his conviction must be vacated.

### 3. Maximum Sentence[9]

The maximum sentence the Court could impose was 30 years. The advisory sentencing guidelines were based on an offense level of 32 and a Criminal History Score of 1. The guideline range was established at 121 to 151 months. (8-26-05, p. 43)

It was obvious from the initial presentence report disclosed on January 27, 2004 and the updated version of May 19, 2004, that Turner faced a sentence in the range of 292 to 360 months if the Court agreed with the Probation Officer.

The Probation Officer recommended a sentence of 300 months based on an

---

[9]Although not preserved in the trial court and argued here to preserve the issue for future developments in the law, Turner argues the maximum sentence was 151 months based on Turner's admission. Otherwise the 360 month sentence is in violation of the United States Constitution and *Blakely v. Washington*, 542 U.S. _, 124 S.Ct. 2531, 159 L.Ed. 2d 403 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000)

upward departure after considering enhancements pursuant to U.S.S.G. §5K2.0, and 5K1.8, and 2G2.2(b)(2). The District Court imposed the maximum sentence of 360 months. Turner received no real benefit for his plea of guilty.

Turner, in a supplemental affidavit will confirm that he was assured by former counsel that the second negotiated plea would result in a sentence of 7.5 to 10 years. He was advised that the 7.5 years was likely based on the anticipated and agreed 5K1.1 downward adjustment of three levels. Absent those assurances Turner would not have waived his constitutional rights and entered a plea of guilty.

Based on the above the plea was not knowing and voluntary.

### 4. Plea Coerced

Turner as will be stated in a supporting supplemental affidavit contends that his will was overborne and that he was coerced by former counsel into entering the second plea agreement.

### D. INEFFECTIVE ASSISTANCE OF COUNSEL

Turner argues his lawyer pretrial and at sentencing was ineffective and so abridged his Sixth Amendment right to effective representation of counsel. The Sixth Amendment right to counsel is the right to effective representation of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).

In *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court delineated the proper scope of review in examining a claim of ineffective assistance of counsel:

> A convicted felon making a claim of ineffective assistance of counsel must identify the acts or omissions that are alleged not to have the result of reasonable judgment. The Court must then determine whether, in light of all the circumstances, the identified acts were outside the wide range of professionally competent assistance. In making that determination, the Court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the Court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

The *Strickland* standard calls for a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id., at 687.

The United States Court of Appeals for the Eleventh Circuit has interpreted *Strickland* for purposes of evaluating counsel's performance as follows:

> [t]he Court must...determine whether, in the light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the Court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Smith v. Wainwright*, 777 F.2d 609,616 (citing *Strickland*, 466 U.S. at 690).

Similarly, under the prejudice component,

28

> [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome...When a defendant challenges a conviction, the question is whether there is a reasonable probability that, but for counsel's unprofessional errors, the fact finder would have had a reasonable doubt respecting guilt.

*Smith*, 777 F.2d at 616 (citing *Strickland*, 466 U.S. at 694-695).

In evaluating trial counsel's performance under the *Strickland* standard, the reviewing Court must strongly presume that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. With his burden in mind, Turner alleges that his counsel was ineffective as noted above and below.

*Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) held:

"[I]n the contexts of guilty plea proceedings, a petitioner must show that but for counsel's errors, he would not have pleaded guilty but would have insisted on proceeding to trial."

A defendant has the right to effective counsel on appeal. See *Anders v. California*, 386 U.S. 738, 741-42, 744, 87 S.Ct. 1996, 1398-99, 1400, 18 L.Ed.2d 493 (1966) (Counsel must function as advocate on behalf of client. In order to prevail, defendant must prove that he did not receive "'reasonably effective representation,'" *Mylar v. Alabama*, 671 F.2d 1299, 1300 (11th Cir. 1982); (citing previous cases), cert denied, 463 U.S. 1229, 103 S.Ct. 3570, 77 L.Ed.2d 1411 (1983). An error increasing

29

a defendant's sentence by as little as six months can be prejudicial within the meaning of *Strickland*. See *Glover v. United States*, 531 U.S. 198, 202-04, 148 L.Ed.2d 604, 121 S.Ct. 696 (2001).

**Jim Parkman is a well respected successful criminal lawyer and has been for many years**. He is, however, human and therefore capable of being ineffective in a given case. The record before this Court suggests he was in this case. Putting aside that Turner received the exact same sentence as if he had proceeded to trial and lost, there were significant omissions in the case at bar that denied Turner his right to effective counsel.

### 1. Withdrawal of 11(c)(1)(C) Plea

As noted in a previous section regarding the events of the 3-4-04 status hearing where Turner's guilty plea was withdrawn, Parkman noted several times that he had been presented new law in the sentencing report with which he was unfamiliar. (3-4-04, pp. 3-5) Attorney Parkman noted the need to look at the law so as to make an informed decision on how to proceed. Yet the record reveals in the very same hearing, without an opportunity to review the law as he stated, he withdrew Turner's plea of guilty on what Turner contends was an enforceable 11(c)(1)(C) plea for five years.

### 2. Failure to Prepare/Investigate

The procedural history of this case is telling as to why an otherwise competent lawyer like Jim Parkman would be ineffective in a particular case. Jim Parkman entered an appearance as counsel in this case on October 6, 2003. At the change of

30

plea to the 11(c)(1)(C) agreement on December 1, 2003 Martin Adams, a Parkman associate, appeared.

On March 2, 2004 Turner was arrested and brought to Court for a status hearing on March 4, 2004 at which time his plea was orally withdrawn. He was detained and has been since that time.

A second plea was entered on May 14, 2004. Sentencing was set for August 16, 2004. It was continued to August 31, 2004. (D-65) Blakely objections were ordered. (D-66) A sentencing memorandum was filed by Parkman on August 17, 2004. (D-68) The Court on its own motion continued the sentencing indefinitely on August 25, 2004. (D-69) On January 31, 2005 the Court reset sentencing for June 14, 2005. (D-75)

During Parkman's representation of Turner and on  September 13, 2004 Attorney Parkman entered an appearance in the case of *United States of America v. Richard Scrushy,* Case No.   2:03-cr-00530-KOB-TMP-1, Northern District of Alabama  The Court can take judicial notice of the magnitude of the Scrushy case and the successful extent of Attorney Parkman's representation of Mr.  Scrushy. The Scrushy verdict was rendered June 29, 2005.  Parkman was tied up almost ten months prior to the August 26, 2005 sentencing.

It was obvious that the Scrushy case consumed Mr.  Parkman's time from his initial appearance until after the verdict.  Post verdict media attention was also obviously time consuming and intense.

The record in this case will reveal that during the course of the Scrushy trial

31

Attorney Parkman sought and was granted two separate continuances of the sentencing in this case. (D-76, 78) The Court continued the sentencing from June 14, 2005 to July 7, 2005 and from July 7, 2005 to August 11, 2005. The Court after a status conference on August 11, 2005 continued the sentencing until August 26, 2005. (D-83)

As Turner will note in his supplemental affidavit his efforts to communicate with Attorney Parkman after his incarceration and during Parkman's representation of Scrushy was non-existent. Turner reports that he never received a single written reply to any of his correspondence prior to sentencing. He also reports that while in Montgomery County Jail Mr. Parkman's phones were blocked to the Evercom Telephone System and therefore Turner could not communicate with his attorney.

Turner advises that after he was transferred to the Elmore County Jail his telephone calls to Mr. Parkman's office were not accepted. He states he called Mr. Parkman's office over 40 times a few days before sentencing and could never get through. Turner states on August 12, 2003 his wife, Mary, contacted the Alabama Bar Association voicing concern over the lack of contact with Attorney Parkman. He relates that after this an appointment was set up and Mary met with Mr. Parkman.

The August 11, 2005 sentencing was postponed two weeks based on Turner's complaints regarding problems with his medication. He reports being unstable to the extent Mr. Parkman did not feel comfortable going forward. The sentencing was conducted on August 26, 2005.

It is clear that Mr. Parkman's distractions prevented adequate preparation.

Even at the sentencing hearing in connection with his objections to the suggested §5K2.8 and §2G2.2 enhancements, the case law upon which he relied had not previously been provided to the Court or the government. (8-26-05, p. 16)

Turner advises that he requested Attorney Parkman to raise, research, and address the following:

1. His childhood sexual abuse from age 6 to 15 (9 years).

2. The nine doctors and/or counselors he sought on my own trying to find treatment.

3. He did not find the right doctor and counselor until 2000. Treatment was impossible to find prior to 2000. The previous doctors and counselors were diagnosing the wrong problem.

4. The file dates of the movies (on CD) of himself and the victim. If the dates are were on or after 4-7-2000, then the age of the victim would be "18".

5. Emails from the victim stored on his computer. He states, it was clear the victim was prostituting himself in exchange for money, alcohol, computer parts, and a laptop.

6. Parkman was supposed to get a letter from Dr. Nelson Handel who was his current psychologist. The letter would state my diagnosis as Bipolar and the medication he was on. Parkman waited to the last minute to contact Dr. Handel, and no a letter was not provided.

7. Conoly made statements from the statements of the victim, but Parkman never objected, or asked questions about such statements, he never once said

33

anything.

8. Parkman should have addressed the things David Conoly said about him, because he had no real proof. In one incidence Conoly told the Court that the victim's mother said to him something about how the victim felt. Yet, the victim would not write a letter to Conoly making any statement.

### 3. Failure to Mitigate

Turner argues that Parkman should have made efforts to mitigate the offense conduct at the sentencing.

### a. Failure to Dispute Facts

As relates to the sentencing enhancements 2G2.2(b)(2) the lack of mitigation is apparent in reviewing the Eleventh Circuit opinion of June 29, 2007 affirming Turner's sentence wherein it states:

"Turner pled guilty to three counts of distribution of child pornography, **and did not dispute the facts supporting those charges**, including that he posted images of the victim on the internet which he used to blackmail the victim into continuing sexual contact with him. Accordingly, the District Court did not err in determining no pecuniary gain was required when Turner distributed the child pornography with the intent to force the victim to return to the sexual relationship." (emphasis added)

As relates to the 5K2.8 upward adjustment the Eleventh Circuit made a similar comment as follows:

"**The facts adopted by the District Court and undisputed by Turner** include that he solicited sex from the victim, a minor, paid the victim to perform

34

sexual acts and expected the victim to engage in sexual acts as payment for computer equipment." (emphasis added)

### b. Failure to Expose Victim's Conduct

To counter this position in the District Court and to strengthen the argument on appeal, it would have been prudent to expose the victim, 17 or not, as an equal aggressor. This is obvious in the discovery provided in the case which are emails from the victim. (Exhibit B, under seal). This exhibit with leave of Court is being filed under seal to protect the identity of the victim and due to the graphic nature of the contents.

The information should have been argued to the Court in mitigation of the upward departure under 5K2.8 and the five level enhancement under 2G2.2. Failure to do so denied Turner the effective assistance of counsel at sentencing.

### c. Failure to Adequately Argue Treatment Efforts

Additionally, the Court at sentencing stated:

"You have been on notice for many years that you suffer from this problem and yet you have done nothing to stop the type of criminal and pedophile desires that you have with young boys." (8-26-05, p. 45)

Attorney Parkman failed to respond by directing the Court to the presentence report containing psychological information that Turner had in fact sought counseling for his problems on many different occasions.

In fact Turner was seen by Dr. Handal from 2002 until he was incarcerated.

He saw Ray Little in 1998, 1999, and 2000. He saw Richard Dismukes in 2000. He also saw Rosemary Phillips for meaningful treatment post arrest. This information clearly contradicts the Court's opinion as stated above. It should have been presented to the Court as a balance to the upward departure imposed resulting in a sentence of 30 years.

### d. Failure to Timely and Effectively Move for Downward Departure

Also, as an after thought at sentencing once the Court had indicated it would upward depart, Attorney Parkman made mention of Turner's troubled youth and voluntary seeking treatment after the incident.

Attorney Parkman did provide the Probation Officer mental health records. Yet only sought a departure from the guidelines at sentencing after he realized the Court was imposing a five level 2G2.2 enhancement and a 5K2.8 enhancement. This is noted as follows:

"Mr. Parkman: one more, Your Honor, if I could. It's not an objection, it's something that deals with the upward increase the Court has already ruled on. If I could, I wasn't going to argue this but since we have gone into upward level of this, I feel like the Court ought to now consider a downward from that on this basis: It's very clear in the presentence report two things. Number one, that Mr. Turner had had a very, very troublesome youth, and in there cited by counselors, which Mr. Conoly put in there, that this was the reason for the conduct of Mr. Turner, and why the conduct has occurred. And I think that's important to note that this wasn't brought on necessarily by just the voluntary necessary actions of someone but had

been brought on to him by a very youthful age, very, very youthful age and the consequences that that arose in his psychological well being also. So with that I feel like we ought to take into consideration a downward departure from the upward departure based on what his past history has been and why we got here today. Number two - -

THE COURT: **Which cite would you give me to the sentencing guidelines that would support the downward departure?**

MR. PARKMAN: **Your Honor, I don't have the exact cite with me because I didn't anticipate getting into that today,** but I think it goes under - - the guidelines did not take into consideration a consideration for the Court in looking at the guidelines, and that's not taken into consideration that I know of in this case by any guidelines, the fact that his youthful situation in a family situation. So I think that can be looked at by the Court as an issue not covered by the guidelines.

Let me add number two while we are here too because it goes with this. And number two, it's in the report itself also that Mr. Turner received, after all this came about, voluntarily before any charges were pending or brought, that he went to and received psychiatric and then other counseling for the problems that had taken place in this case. I think it's important for this Court to say that consideration should be given for someone who has sought voluntary treatment, not treatment pending a case. All this treatment occurred before any charges." (emphasis added)

It is obvious, given the suggested enhancements and upward departures in the PSI, the downward departure motion after the Court's findings should not have been

37

an after thought.

### e. Failure to Establish Business Relationship Between Turner and the Victim

Additionally, there was no mention at sentencing that Turner and the victim actually worked together in a computer business. This fact would have made the victim seem less vulnerable and been a viable argument in opposition to the 2G2.2 and 5K2.8 enhancements. After all it was these enhancements that elevated the guidelines in this case from 121 to 151 months to 292 to 360 months. This, of course, resulted in a 360 months maximum sentence.

### f. Failure to Argue Rule 11 Proffer as Mitigation

Lastly, Parkman did not use the Rule 11 proffer done by Turner as mitigation. This could have and should have been used in the face of the government's failure to file a 5K1.8 motion for substantial assistance.

### g. Failure to Make Effective Argument For District Court Regarding 5K2.8 U.S.S.G.

Parkman objected at sentencing. It is, however, believed that a more detailed argument at sentencing may have been more effective[10] with the trial court. Probation suggested and the district court agreed that Turner's sentence should reflect an upward departure from the suggested guidelines based on extraordinary pain and suffering of the victim due to his identity being exposed. The defense objected. (8-

---

[10]Turner concedes he made these 5K2.8 and2G2.2 arguments on appeal and the same were rejected by the trial court.

26-05-pp.10-11) The defense argued that this case was distinguishable from *United States v. Blas*, 360 F.2d 1268 (11th Cir. 2004); *United States v. Anderson*, 5 F.3d 795 (F.3d 795 (1993); and *United States v. Hersh*, 297 F.3d 1233 (11th Cir. 2002). The district court disagreed and Turner appealed.

In the instant case the victim was threatened with his identity being exposed by the publishing of images over the internet. Although posted, Turner contends the images were not published. However, even if they were, arguendo, there is no evidence of psychological harm or impairment rising to the level of the egregiousness displayed in *Blas,* supra. (Adolescent exposed to HIV through several sexual acts and failure to notify her of his condition) The court held *Blas'* conduct to be unusually heinous, cruel, brutal or degrading. The court held his actions were incredibly risky, dangerous, and presented circumstances that clearly were not taken into account in formulating the guidelines.

In the instant case, as argued by Parkman at sentencing, there was no more than speculation as to the alleged harm. There was no evidence from any mental health professional substantiating the alleged harm. The victim, albeit underage when the romantic relationship began, was a willing participant for financial renumeration.

Even under the egregious conditions in *Blas*, the guidelines were enhanced to a level 34 with a guideline range of 151 to 180 months, and an 180 month sentence. This Court found the 180 month sentence reasonable. Surely, Turners sentence, double that of *Blas*, was not.

The *Anderson* case (5 F.3d 799 5th Cir. 1993) also addressed an upward

39

departure from the suggested guidelines based on circumstances not otherwise taken into account by the guidelines such as psychological injury and the defendants extreme conduct.

In *Anderson* the defendants were charged with kidnaping. The victim was raped two or three times during the ordeal. The assault also included making the victim perform oral sex with threats of death, to burn the victim and the car. In *Anderson* the probation calculation of the guidelines was level 31. The court departed upward four levels for a total of 33 based on extreme psychological harm to the victim and the defendants extreme conduct. Based on a level 33 and Criminal History Score of III the suggested guidelines were 168 to 210 months. *Anderson* received a term of 200 months. 160 months (or 13 years) less than Turners in the instant case. Based on the comparison, Turner's sentence of 30 years was clearly unreasonable and the conduct did not fall outside the heartland as addressed in *Blas* and *Anderson*. Even *Anderson's* co-defendant Barnett, with a Criminal History Score of V and a base level of 33 received a sentence of only 240 months (20 months less than Turner) with guidelines of 210 to 262 months.

In response to the defense objections the Probation Officer cited to the court *United States v. Hersh*, 297 F.3d 1233 (11th Cir. 2002) arguing that a ten level upward departure had been upheld.

In *Hersh* the Court based the departure on 20 years of predatory behavior including at least four, and countless unidentified victims (not charged). The *Hersh* court found the sexual exploitation was aggravated and prolonged and the likelihood

40

of recidivism was high.   Hersh's victims, unlike the victim this case, were extraordinarily vulnerable.  Hersh's victims were Third World minor victims unlike the victim in this case, a willing participant for financial renumeration.  Hersh was also noted to have combined his information and resources with others to sexually exploit minor victims of Third World countries.  This case, too, was indistinguishable from the case at bar.

In the *Hersh* case the district court in departing 10 levels (from 32 to 42) imposed a sentence of 105 years.  None of this was argued by Parkman.

**h.  Failure to Effectively Argue In The District Court regarding 2G2.2 U.S.S.G.**

Turner objected to the suggested five level 2G2.2 enhancement based on his alleged publication of the victim images for pecuniary gain.  (8-26-05-p.25) The Court relied on *United States v. Probel*, 214 F. 3d (11th Cir. 2004) in applying the enhancement.

The conduct simply does not meet the required level of pecuniary gain necessary for application of a five level 2G2.2 enhancement.  In *Probel* the Court held that there was nothing in the guidelines that suggested the term "distribution" was limited to instances of pecuniary or other benefit.  It should be noted that *Probel* involved application of 2G2.2(b)(2).  Turner, on the other hand, involved (at least as reported in the sentencing transcript) a 2G2.2 enhancement.    When reviewing 2G2.2(b)(3) it recommends applying the greatest offense level (five) when the offense involved distribution for pecuniary gain or expectation of receiving a thing of value but not for pecuniary gain, or distribution to a minor.  None of these occurred at bar.

41

Unlike *Probel*, the victim in this case was not under the age of 12. Nor did the material at bar involve sadistic or masochistic portrayals. To be sure the five level enhancement was erroneous in this case the District Court should have evaluated the circuit splits on the issue of pecuniary gain. The Seventh and Ninth Circuits have held pecuniary gain is required while the Second, Fifth, Sixth, Eighth, and Eleventh have held that pecuniary or other gain is not required.[11]

The Eleventh Circuit decision in *Probel*, siding with the majority of the circuits addressing the issue, causes a double penalty in requiring a five level increase for "distribution" or publishing the images.

Turner respectfully disagreed with the Eleventh Circuit holding in *Probel* and argued that pecuniary gain or receiving something of value is necessary in order to apply the five level enhancement. None of this was present here. Turner threatened to publish the victims images if the defendant did not stay in the relationship. The victim did not, instead reporting the matter ultimately to the authorities. There was no gain but instead a loss by the threat. U.S.S.G. 2G2.2 simply does not apply. As such the sentence should not have been 30 years and the five level enhancement removed.

---

[11]*United States v. Pearl*, 324 F.3d 1210 (10th Cir. 2003) circuit split over whether an increase may be imposed absent a pecuniary gain. Compare *United States v. Laney*, 189 F.3d 954, 959 (9th Cir. 1999) and *United States v. Black*, 116 F.3d 198, 202-03 (7th Cir. 1997) (pecuniary gain required) with *United States v. Probel*, 214 F.3d 1285, 1289 (11th Cir. 2000); *United States v. Lorge*, 166 F.3d 516, 518 (2nd Cir. 1999); *United States v. Nibbler*, 159 F.3d 233, 238 (6th Cir. 1998) and *United States v. Canada*, 110 F.3d 260, 263 (5th Cir. 1997) (pecuniary gain not required in order to impose 5-level increase.

### 4. Downward Departure/Protect Act

Turner also argues that the Probation Officer's suggestion to the Court that a downward departure was most likely barred based on the Protect Act was incorrect. The Probation Officer relied on the Protect Act as good law. The Protect Act is directly related to the guidelines now rendered advisory by *Booker*. The Protect Act was enacted April 30, 2003. Under the Protect Act when a sentence was outside the guideline range it was reviewed de novo based on three factors. (See *Blas*, supra) The *Blas* case was decided February 19, 2004, four months before *Blakely v. Washington,* 542 U.S. _, 124 S.Ct. 2531, 159 L.Ed. 2d 403 (2004), and 11 months before *United States v. Booker*, 543 U.S. _, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005). Turner argued on appeal that the mandatory application of the Protect Act in barring downward departures from the now advisory guideline system was no longer enforceable.

The Eleventh Circuit in its opinion of June 29, 2006 failed to address this argument.[12]

In 2005, the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 (PROTECT Act) lost its power over sentencing judges. The PROTECT Act amended 18 U.S.C. §3553(b)(2) by eliminating judiciary

---

[12]Counsel for Turner did not make the precise argument on appeal that is made here.

43

discretion during sentencing. Listing only three acceptable exceptions, §5K of this Act removed virtually all possibility of downward departures for defendants convicted of sexual offenses relating to children. *See* Pub.L. No. 108-21. The Act relied on the mandatory nature of the Sentencing Guidelines for effect.

After *Booker*, the Sentencing Guidelines became advisory, rendering the Act irrelevant. *See Booker* at 298, Justice Breyer (admitting that after the Court's remedy, the PROTECT Act's provisions "have ceased to be relevant"). Circuits reviewing this issue apply *Booker* to the PROTECT Act to the same extent.

In June of 2005, the Tenth Circuit declared that although a district judge justifiably believed that the PROTECT Act prohibited a downward departure for child pornography, that belief was error in light of *Booker*. *U.S. v. Garcia*, 411 F.3d 1173, 1180 (10th Cir. 2005). The Sixth Circuit addressed the PROTECT Act in light of *Booker* in 2007. There, the court held that when reviewing a sentencing departure, the proper measure is abuse of discretion, departing from the de novo standard once mandated by the PROTECT Act. *U.S. v. Husein* 478 F.3d 318, 325 (6th Cir. 2007).

Here, the Probation Officer (PO), as in *Garcia*, justifiably but erroneously believed the PROTECT Act still mandatory. During the sentencing phase, the Mr. Conoly in response to a defense request for a downward departure stated  to Judge Fuller, "to my knowledge [the PROTECT Act] is still valid and it prohibited the Court from downward departing..." (8-26-05, p. 40). The Probation Officer further instructed the sentencing judge specific allowances and prohibitions for a downward

departure from §5K2.22. (8-26-05, p. 41). Without any dispute to the Probation Officer's erroneous contention, the judge denied the departure. (8-26-05, p. 42).

### 5. Failure to Cross Examine Conoly

United States Probation Officer David Conoly made arguments to the Court which were both factual and legal. A significant portion of his argument was about the victim and the damage done by Turner's actions. Attorney Parkman should have sought to make Mr. Conoly a witness so that he could have cross examined him regarding his interview with the victim. This was critical given the fact the victim elected not to come to the sentencing hearing and that Officer Conoly was allowed to present the victim's position from his own eyes and not the victims. If this had occurred the victim would have appeared less vulnerable and the same would have impacted the 2G2.2 enhancement and 5K2.8 upward adjustment.

Attorney Parkman clearly recognized the significance of Conoly's position as noted:

MR. PARKMAN: Yes, sir. Unfortunately everything you just heard is not based on anything presented by the way of documentation to this Court. You have heard counsel for the government say well, because he didn't send in anything then it must be.

...You have heard Mr. Conoly stand up and recite the law dealing with this, but the key to this is, is in everything he said was followed by the relationship. It was a relationship. That's different than every Court that has been - - that I have looked at on these issues have dealt with. It was a relationship. And the relationship was not

45

based on any type of force, kidnaping, unusual conduct that the relationship like that is going to have. We may not like the conduct, but that's not a reason to start interjecting opinions into sentencing. And so I say with that, Your Honor, that the law is very clear in this that you can guess why this happened or what happened, but unfortunately there's just nothing there from the victim or any counselor or psychologist to indicate otherwise." (8-26-05, pp. 22-23)

### 6. Failure to Seek Variance

After the Court concluded its findings denying a departure downward, Parkman did not make made a request for a variance from the guidelines. Based on the mitigation, available, but not used, Parkman could have and should have made a credible variance argument. If so the sentence would have been reduced. Failure to do so constitutes ineffective assistance of counsel. See *Glover, supra.*

### 7. Failure to Seek Mental Evaluation

Parkman acknowledged problems with Turner's medication. Yet no mental evaluation was done for the benefit of Turner or the Court. This was ineffective assistance of counsel.

...THE COURT: ...Let me just say for the benefit of all involved, it was my concern to have Mr. Turner in a state mentally that he could understand and participate in the sentencing of this case, and I ascribe no particular interest in whatever motivation it was that caused the sentence to be continued... (8-26-05, pp. 7-8)

Jim Parkman expressed concern as follows:

46

"...Nurse Singleton indicated to him that, in fact, as of August 1st of 2005 Steven Smith in fact had, in fact, cancelled all Lithium and Depokote, and at the time that he was up there this week on Tuesday, Depakote nor Lithium had ever been given to Kevin Turner since August the 1st, and that the statement by Steven Smith that he had been was incorrect and he - - or the nurse indicated that was just simply a mistake on their part, and should have read otherwise." (8-26-05, pp. 6-7)

Turner contends his competency should have been evaluated prior to the entry of his plea of guilty and before sentencing.

### E. ACTUAL INNOCENCE

Turner contends that he is actually innocent of the conduct relating to the victim as the relationship was consensual and the victim had the capacity to consent.

The images upon which the government relied to file the charges in this case are dated. These involve the victim and the subject of the claim that Turner posted them on the world wide web. While Turner denies that the images went beyond a local Dothan server he further argues that the dates when the files were opened will reveal that the victim was 18 and therefore capable of consent.

Counsel on several occasions sought this discovery from AUSA Susan Redmond. (Exhibit C) Counsel in making this request did not comprehend that taking this position, even for discovery purposes, would be contrary to government policy. (Exhibit D)

47

Counsel's schedule has not permitted her coordination with the FBI to view these documents. Counsel underwent hip replacement surgery on August 13, 2007 and has been out of work for the past six weeks. Prior to this counsel was attempting to complete all possible work in preparation for the surgery and recovery period away from the office.

Turner feels very strongly about this issue and counsel would be remiss for not raising the issue. Counsel this week attempted contact with FBI Special Agent Margaret Faulkner to review the evidence. To date she has not returned the call.

Counsel will make it a priority to view the evidence to further develop this claim. If Turner is correct and the dates on the files establish the victim's age as 18, then he would be innocent of some of the charges to which he pled guilty. Further, given that U.S.S.G. 2G2.2 was used to substantially enhance Turner's punishment, the victim's age of 18 would have resulted in a lesser sentence. §2G2, application Note 1, states that a victim under 18 cannot consent.

Simultaneous to the filing of this motion, Turner is filing a motion to supplement the 2255. This issue will be subject of the supplementation as well as an affidavit from Turner. Turner, however, raises the claim of actual innocence so as to preserve the issue as timely filed.

A habeas court may reach the merits of a claim not raised in a previous petition only if the petitioner establishes both cause and prejudice, or shows that the fundamental miscarriage of justice, or actual innocence, exception applies. *McCleskey v. Zant*, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517

(1991).

A habeas petitioner asserting actual innocence to avoid a procedural bar must show that his conviction "probably resulted" from "a constitutional violation." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 867 (1995) (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986)).

The petitioner meets the "probably resulted" standard by demonstrating that, based on the new evidence, "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327, 329, 115 S. Ct. at 867-68. The "reasonable doubt" standard is not to be determined on the basis of the district court's independent judgment, but should be based on the district court's "probabilistic determination about what reasonable, properly instructed jurors would do." Id. at 329, 115 S. Ct. at 868. The petitioner must support the actual innocence claim "with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." Id. at 324, 115 S. Ct. at 865.

A petitioner meets the "threshold showing of innocence" justifying "a review of the merits of the constitutional claims" if the new evidence raises "sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." Id. at 317, 115 S. Ct. at 862.

## IV. TURNER REQUEST AN EVIDENTIARY HEARING

Contested fact issues, in a proceeding on a Motion to Vacate a federal conviction and sentence, must be decided on the basis of an evidentiary hearing and

not on affidavits. *Montgomery v. United States*, 469 F. 2d 148 (5th Cir. 1972).

In post conviction proceedings such as 28 U.S.C. §2255, the statute calls for evidentiary hearings unless the motion, files, and records of the case <u>conclusively</u> show that the Movant is entitled to no relief. *Fountaine v. United States*, 411 U.S. 213, 96 S.Ct. 1461, 36 L.Ed. 2d 169 (1973) (per curium).

The Defendant, denied of an opportunity to be heard, "has lost something indispensable however convincing the ex parte showing." *United States v. Hayman*, 342 U.S. 205, 220, 72 S.Ct. 263, 96 L.Ed. 232 (1952), citing *Snyder v. Massachusetts*, 692 F.2d 565 (1982), an evidentiary hearing under the present circumstances is mandated. The Ninth Circuit, in *Bauman v. United States*, 692 F.2d 565 (1982), held that a "hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims." This legal authority and the sound reasoning associated should be equally applicable to the case at bar.

The facts of this case are distinguishable from those noted in *United States v. McGill*, 11 F. 3d 223 (1st Cir. 1993), because it cannot be said in Movant's case that an evidentiary hearing would serve no purpose.

## VI. CONCLUSION

**WHEREFORE**, Movant Turner prays this Honorable Court will alter, amend or vacate his sentence pursuant to 28 U.S.C. §2255.

Respectfully submitted this 27th day of September 2007.

_____
Susan G. James (JAM012)

Address of Counsel:
Law Office of
Susan G. James & Associates
600 S. McDonough St.
Montgomery, AL  36104
(334) 269-3330

## CERTIFICATE OF SERVICE

I hereby certify that a true and complete copy of the foregoing was served upon

Susan Redmond,
Assistant United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101

this 27th day of September 2007.

the above instrument was served via:

( ) personal service
(X) first class mail
( ) certified mail, return receipt requested
( ) facsimile
( ) overnight courier

_____
Of Counsel

51

# EXHIBIT A

[DO NOT PUBLISH]

RECEIVED IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

JUL 2 1 2006

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 29, 2006
THOMAS K. KAHN
CLERK

No. 05-14897
Non-Argument Calendar

D. C. Docket No. 03-00219-CR-F-S

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KEVIN W. TURNER,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Alabama

**(June 29, 2006)**

Before ANDERSON, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Kevin Turner appeals his 360-month sentence imposed after he pled guilty to various counts of distributing, producing and possessing child pornography. He raises three grounds on appeal. First, he asserts the district court erred in imposing a 5-level enhancement under U.S.S.G. § 2G2.2(b)(2)[1] because the crimes involved distribution of child pornography absent pecuniary gain. Second, he contends the district court abused its discretion by upwardly departing by 8 levels under U.S.S.G. §§ 5K2.0 and 5K2.8. Third, he claims his sentence is unreasonable pursuant to *United States v. Booker*, 125 S. Ct. 738 (2005). We affirm Turner's sentence.

## I. DISCUSSION

### A. *U.S.S.G. § 2G2.2(b)(2)*

We have held pre-*Booker* standards of review concerning the district court's application of the sentencing Guidelines still apply post-*Booker*. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005). We review a sentencing court's application of the Guidelines to the facts de novo and its findings of fact for clear error. *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002).

Turner's base offense level is 17, pursuant to U.S.S.G. § 2G2.2–entitled "Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving,

---

[1] Turner was sentenced under the 1998 version of the Sentencing Guidelines. Thus, all citations to the Sentencing Guidelines are to the 1998 version.

2

Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation

of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with

Intent to Traffic."  Under "Specific Offense Characteristics," U.S.S.G.

§ 2G2.2(b)(2) provides as follows: "If the offense involved distribution, increase

by the number of levels from the table in § 2F1.1 corresponding to the retail value

of the material, *but in no event by less than 5 levels*."  (emphasis added).  The table

in § 2F1.1 provides for increased offense levels dependent on the loss due to fraud.

For purposes of § 2G2.2, "'[d]istribution' *includes* any act related to

distribution for pecuniary gain, including production, transportation, and

possession with intent to distribute."  U.S.S.G. § 2G2.2, comment. (n.1) (emphasis

added).  The general application principles of the Guidelines provides: "The term

'includes' is not exhaustive."  U.S.S.G. § 1B1.1, comment. (n.2).  Thus, we held

the term "distribution" in this respect does not require a showing of pecuniary or

other benefit.  *United States v. Probel*, 214 F.3d 1285, 1288-89 (11th Cir. 2000).

Rather, we determined "[t]he reference to the fraud table does not limit the

application of the enhancement to individuals who receive a pecuniary benefit

from the distribution of child pornography."  *Id.* at 1290.  "The threshold five-level

enhancement is appropriate" where "[a]ny distribution of child pornography,

3

gratuitously or for profit, results in the continued exploitation of the victims

depicted in the images." *Id.* at 1291.

We are bound to follow our decision in *Probel*. *United States v. Smith*, 934

F.2d 270, 274 (11th Cir. 1991) (noting "a panel of this court cannot overrule

binding precedent issued by a prior panel"). Turner pled guilty to three counts of

distribution of child pornography, and did not dispute the facts supporting those

charges, including that he posted images of the victim on the internet which he

used to blackmail the victim into continuing sexual contact with him. Accordingly,

the district court did not err in determining  no pecuniary gain was required when

Turner distributed the child pornography with the intent to force the victim to

return to the sexual relationship.

B. *Upward Departure*

We review a district court's decision to depart from the Guidelines for an

abuse of discretion, giving the district court's determination "substantial

deference." *United States v. Melvin*, 187 F.3d 1316, 1320 (11th Cir. 1999). A

district court may depart upward from the Guidelines if it determines "'there exists

an aggravating or mitigating circumstance of a kind or to a degree, not adequately

taken into consideration by the Sentencing Commission in formulating the

guidelines that should result in a sentence different from that described.'" *Id.*

4

(citation omitted). "Whether a case is unusual enough to fall outside the heartland is determined in large part by comparison with other Guidelines cases." *Id.*

The extent of a district court's departure from the Guidelines must be reasonable. *Id.* at 1322. The reasonableness of the departure is evaluated in light of the factors to be considered in imposing the sentence and the reasons the district court provided for departing. *Id.* at 1322-23. "Among the factors a sentencing court must consider are the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense." *United States v. Blas*, 360 F.3d 1268, 1273-74 (11th Cir. 1993).

Under U.S.S.G. § 5K2.8, entitled "Extreme Conduct," "[i]f the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct." U.S.S.G. § 5K2.8. "Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation." *Id.*

In *Blas*, we held the district court did not abuse its discretion by imposing a 7-level upward departure under § 5K2.8, on the basis the defendant knowingly exposed his minor victim to HIV through sexual acts. *Blas*, 360 F.2d at 1273-74. We noted "Blas's actions with regard to his young victim were incredibly risky and

5

dangerous, and presented circumstances that clearly were not taken into consideration in formulating the applicable guidelines." *Id.* at 1274.

In *United States v. Hersh*, 297 F.3d 1233, 1251 (11th Cir. 2002), we held a 10-level upward "prophylactic"[2] departure was not an abuse of discretion. The district court based the departure on a finding the appellant had engaged in prolonged sexual exploitation of minors, the victims (children from Third World countries) were "extraordinarily vulnerable," and the appellant had a 20-year history of committing sexual abuse, which we determined was an adequate basis upon which to find the "alternative sentence" was appropriate. *Id.* at 1251-53.

Here, the district court based its departure upon the determination Turner's conduct was manipulative, extreme, and heinous. Specifically, it noted the "crime of sex and violence" took place over a 20-month period, Turner created a "atmosphere of fear" in the area, he had a prior conviction for a similar crime, and he began to engage in another similar relationship after the victim in the present case reported the situation to the FBI. The court also determined Turner's actions of blackmailing the victim to continuing a sexual relationship, including

---

[2]Specifically, the district court had noted in a sentencing order that if we reversed as to a certain sentencing computation, it "would still achieve the same sentence by granting an upward departure" of 10 levels. *See Hersh*, 297 F.3d at 1251.

6

videotaping the victim without his knowledge and posting the images on the internet, constituted extreme conduct.

The facts adopted by the district court and undisputed by Turner include that he solicited sex from the victim, a minor, paid the victim to perform sexual acts and expected the victim to engage in sexual acts as payment for computer equipment. It is similarly undisputed he blackmailed the victim into continuing to engage in sexual contact, in part, by videotaping the acts without the victim's knowledge and posting them on the internet. In light of these facts, the departure did not constitute an abuse of discretion. Further, the 8-level departure is not unreasonable in light of the grounds set forth by the district court.

C. *Reasonableness*

In light of *Booker*, we review a final sentence under the advisory Guidelines for reasonableness. *Crawford*, 407 F.3d at 1178-79. The district court must first accurately calculate the Guideline range, and then it "may impose a more severe or more lenient sentence" after considering the § 3553(a) factors. *Id.* Factors include the available sentences, the applicable Guideline range, the nature and circumstances of the offense, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense. 18 U.S.C. § 3553(a). We have clarified the district

7

court is not obligated to specifically address and analyze on the record every § 3553(a) factor. *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005).

Here, the district court correctly calculated the applicable advisory range under the Guidelines. The court then specified Turner's case was aggravated by his criminal history, the nature and seriousness of the crime, and the need to promote respect for the law, encourage deterrence, and protect to the public, before imposing a sentence at the high end of the Guidelines range of 360 months. *See* 18 U.S.C. § 3553(a). We conclude Turner's ultimate sentence is reasonable.

## III. CONCLUSION

The district court did not err in enhancing Turner's sentence under U.S.S.G. § 2G2.2(b)(2) or abuse its discretion by upwardly departing 8 levels under U.S.S.G. §§ 5K2.0 and 5K2.8. Further, Turner's ultimate sentence is reasonable.

AFFIRMED.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

8

# EXHIBIT B

# TO BE FILED UNDER SEAL

# EXHIBIT C

Law Office Of
# Susan G. James and Associates

Susan G. James
Denise A. Simmons

March 7, 2007

Susan Redmond
Assistant United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101

Ref: Turner, Kevin

Dear Susan:

Please advised this is my third request on behalf of Kevin Turner. (see attached) He advises me that it is imperative that I obtain the CD rom containing the videos of he and the victim. This is important for us to have in order to prepare a 28 U.S.C. §2255. This evidence should have been provided in discovery. However, efforts to obtain the same from Jim Parkman have been unsuccessful. If for some reason you cannot provide these to me, then I request an opportunity to review them. I am particularly interested in the dates relative to the various imaging.

Thanking you in advance for your anticipated cooperation. With kindest regards, I remain

Truly yours,

Susan G. James

c:
Kevin Turner
Carmen Turner



Law Office Of
# Susan G. James and Associates



Susan G. James
Denise A. Simmons

October 10, 2006

Susan Redmond
Assistant United States Attorney
P.O. Box 197
Montgomery, Alabama, 36101

Ref: Turner, Kevin

Dear Susan:

I have once again heard from Kevin Turner and he advises me that it is imperative that I obtain the CD rom containing the videos of he and the victim. This is important for us to have in order to prepare a 28 U.S.C. §2255. This evidence should have been provided in discovery. However, efforts to obtain the same from Jim Parkman have been unsuccessful. If for some reason you cannot provide these to me, then I request an opportunity to review them. I am particularly interested in the dates relative to the various imaging.

Thanking you in advance for your anticipated cooperation. With kindest regards, I remain

Truly yours,

Susan G. James

c:
Kevin Turner
Carmen Turner



Law Office Of
# Susan G. James and Associates

Susan G. James
Denise A. Simmons

January 16, 2006

Susan Redmond
U. S. Attorney's Office
P. O. Box 197
Montgomery, Alabama 36101-0197

Dear Susan:

As you know I am representing Kevin Turner post conviction.
We had secured discovery from Jim Parkman.  However, in the
discovery, the CD rom's that were referenced in the
prosecution of this case were not included.  I believe that
Parkman indicated to Turner's family that he had provided
all the discovery.  I am requesting a copy of any CD rom's
that might be included in the discovery.  If there is a cost
associated with this, please don't hesitate to contact me.

I would appreciate your prompt attention to this matter.
Thanking you in advance for your anticipated cooperation.

With kindest regards, I remain

Truly yours,

Susan G. James

c:
Kevin Turner



# EXHIBIT D



**U.S. Department of Justice**

*United States Attorney*
*Middle District of Alabama*

---

One Court Square, Suite 201
Post Office Box 197
Montgomery, Alabama 36101-0197

Telephone: 334/223-7280
Fax: 334/223-7560
Fin Lit Fax: 334/223-7201
Civil Fax 334/223-7418
Criminal Fax: 334/223-7135

March 12, 2007

Susan G. James, Esq.
Susan G. James and Associates
600 South McDonough Street
P.O. Box 198
Montgomery, Alabama 36101-0198

     RE:   United States v. Kevin Turner

Dear Ms. James,

     I am in receipt of your letter dated March 7, 2007, in which you request that I provide you a copy of pornographic materials involving your client, Kevin Turner, and a child. Although I believe I have, in prior conversation with you, explained the policies and procedures of this office in providing child pornography as discovery, please allow me to reiterate.

     Neither you nor your client will receive copies, images, etc., of the child pornography created by your client. The Office of the United States Attorney for the Middle District of Alabama does not maintain in its custody child pornography, therefore, when your schedule allows, arrangements can be made for you to view the child pornography with the case agent.

                  FOR THE UNITED STATES ATTORNEY
                  LEURA G. CANARY

                  Susan R. Redmond
                  Assistant United States Attorney

**U.S. Department of Justice**

*United States Attorney*
*Middle District of Alabama*
*P.O. Box 197*
*Montgomery, Alabama 36101-0197*

Official Business
Penalty for Private Use $300

PENALTY FOR PRI-
VATE USE $300.00



017H155119

$0.39

03/12/20

Mailed From

**Susan G. James, Esq.**
**Susan G. James and Associates**
**600 South McDonough Street**
**P.O. Box 198**
**Montgomery, Alabama 36101-0198**