IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

2007 OCT 15  A 9: 29

KEVIN W. TURNER,
)
)        DEBRA P. HACKETT, CLK.
PETITIONER,                          U.S. DISTRICT COURT
)        MIDDLE DISTRICT ALA
)
V.                                   )        CIVIL ACTION NO: 1:07cv863-MEF
)
UNITED STATES OF AMERICA,            )
)
RESPONDENT.                          )

## AFFIDAVIT OF JAMES W. PARKMAN, III

STATE OF ALABAMA
COUNTY OF JEFFERSON

Before me, the undersigned authority, personally appeared JAMES W. PARKMAN, III, who

is known to me, and who after being first duly sworn according to the law did depose and state as

follows:

This was prepared only due to an Order by the United States District Court and for no other

reason.

On October 9, 2003, I was hired to represent the Petitioner, Kevin Turner, on seven counts

of a federal indictment in the United States District Court, Middle District of Alabama.

The federal indictment consisted of seven counts: Counts One and Two alleged sexual

exploitation of children (these were the worst counts and involved the defendant spending the rest

of his life in prison if convicted); Counts 3-5 were Distribution of Child Pornography; Count 6 was

Production of Child Pornography; and Count 7 was Possession of Child Pornography.

These charges in the indictment began in early 1998 when Kevin Turner initiated contact,

1

by use of a computer, with a 16 year old juvenile boy (name withheld by me from this answer). By Spring 1998, Kevin Turner began having sexual relations with the now 17 year old juvenile in exchange for money. These sexual encounters were being held at the home of the Petitioner. This sexual relationship continued until July 1. 2000 when the juvenile broke off the relationship.

On July 2, 2000, Turner sent an e-mail message to the juvenile. This message included a link to an internet website created by Turner. When the juvenile accessed the website, he discovered that Turner had posted the pornographic videos of the juvenile on the internet, including the juvenile's name and e-mail address. These were the same videos that the juvenile had viewed on Turner's computer in late 1998. The videos included images of the juvenile masturbating. The juvenile is clearly identifiable in the videos. Turner had also posted still images of the juvenile taken from the videos. The juvenile contacted AOL asking that the site be removed. These videos were done by Turner without the consent or knowledge of the juvenile. Thereafter, the juvenile contacted Attorney Mac Borland in Dothan, Alabama, who sent a letter to Kevin Turner asking him to cease, desist and destroy the material. On July 10, 2000, Kevin Turner hand delivered a letter to Attorney Mac Borland acknowledging the crimes and apologizing.

On August 8, 2000, the FBI issued a search warrant on the Turner property and seized several computer systems and disks. Upon examination of these computer materials, sexually explicit videos involving the juvenile and Turner were found; the posted website; electronic massages between them; and approximately 800 images of child pornography and various sex acts with children were also found on the computer.

Based on the foregoing, the indictment was rendered on September 23, 2003. Petitioner Turner was released from custody on September 29, 2003 to await trial.

2

On November 13, 2003, I filed a very detailed Motion to Suppress with an accompanying brief. (See Exhibit A). This was the first of its kind to be filed in our district. However, the problem was that even if granted it would not do away with counts one and two, but only counts three through seven. Such would still leave use with our biggest problem, especially in light of the extra judicial confession to Attorney Borland. ( The problem was compounded by the fact that Kevin Turner had previously been convicted of sexual abuse 2nd degree I Houston County, Alabama on October 28, 1995 involving another young juvenile male).

Because of the motion, an offer was made by prosecutors to drop counts one and two; Petitioner Turner to plead guilty to counts three through seven; and the sentence to be somewhere in the ten year range.

We accepted the offer and pled guilty on December 1, 2003. However, when we discovered that the court would not accept that range, we withdrew the guilty plea on March 4, 2004.

Thereafter, the court, on its own motion, in March, 2004, moved for Petitioner Turner to be incarcerated pending trial due to the fact that he was not suppose to be released on these charges in the beginning and that another juvenile was located on Petitioner Turner's property with Turner. A full detention hearing was conducted and thereafter Petitioner Turner was detained in custody.

On April 30, 2004, we filed another notice of change of plea; a plea agreement was executed on May 14, 2005 and Petitioner Turner pled guilty on August 26, 2005. A pre-sentence report was filed recommending an extreme upward departure in Turner's sentence. I filed an objection and brief to these. (See attached Exhibit B).

After an oral hearing, the court departed upward, from a guideline range of 121 to 151 months (which we anticipated) to a sentence of 360 months. Furthermore, I spent numerous hours

3

talking to Turner's doctors, psychiatrists and counselors as well as going to the jail to try to correct problems of medication and unstable behavior.

Not only was every tactical decision discussed with my client, but numerous hours spent discussing this with his wife, Mary Leon Turner. Kevin Turner was aware of all evidence and decisions by me, including the decision to withdraw from the case as his attorney. In so doing, I protected Kevin Turner's rights for filing a notice of appeal, obtaining court authority and discussing the appellate issues with his new attorney. I withdrew because this sentence was high, problems with the client, and I wanted another attorney to review what I did.

Other members of my firm handled preliminary matters. One of the problems we encountered was that during the sentencing phase, the United States Supreme Court ruled that the guidelines were not mandatory anymore, but only advisory. Such caused delays and continuances by the court itself in order to decide what to do on our sentencing.

## ANSWER TO SPECIFIC ALLEGATIONS

1.    To the allegations that I did not object to the sentencing report on enhancements, this is totally not true. (Please see Exhibit B). Other cases were argued at the sentencing with proper objections made so such could be presented on appeal. The following cases were all read by me in preparation: U.S. v. Prabel, 214 F.3d 1285 (11th Cir.2000); U.S. v. Blas, 360 F.3d 1268(11th Cir.2004); U.S. v. Anderson, 5 F3d 795 (5th Cir.1993); U.S. v. Boneshirt, 86 Fed. App.(8th Cir. 2003); U.S. v. QueensBoroughs, 227 F3d 149 (3rd Cir.2000); U.S. v. Kise, 369 F3d 766 (4th Cir. 2004); U.S. v. Espinoza, 350 F3d 978 (9th Cir.2003); U.S. v. Hill, 258 F3d 355, (5th Cir. 2001); U.S. v. Caro, 309 F3d 1748 (11th Cir. 2002); U.S. v. Bender, 290 F3d 1279 (11th Cir.2002); Ashcroft v. Freespeech, 535 U.S. 234 (2002); U.S. v. Laney, 189 F.3d 954 (9th Cir.1999); U.S.

4

**v. Brown**, 333 F3d 850 (7th Cir.2002); **U.S. v. Hibbler**, 159 F3d 233 (6th Cir. 1998); **U.S. v. Lange**, 166 F3d 516 (2nd Cir. 1998); **U.S. v. Black**, 116 F3d 198 (7th Cir. 1997).

2.     As to the allegation that I should have enforced the plea agreement as to the five years incarceration. Unfortunately, it was not the government that rejected the plea agreement but the court, leaving the defendant without an agreement and without any knowledge as to a sentencing range. Once this occurred, I discussed this situation with the Petitioner Turner and it was Petitioner Turner that insisted we withdraw the plea at this time. I did concur with the Petitioner Turner's position. At the time, I clearly felt it was in Petitioner Turner's best interest to withdraw the plea.

3.     As to the allegation that at the second plea the defendant was not mentally competent, such was not the case. I took measures to make sure Petitioner Turner understood the nature of the plea and the consequences, which included the following:

a.     In discussions with the Petitioner Turner it was obvious to me that he was well aware of what was happening, both at the plea and sentencing.

b.     That prior to the sentencing the petitioner sent me several letters which clearly indicate a very clear thought pattern showing competency and clarity. (See Attached Exhibit C).

c.     Furthermore the petitioner wrote the judge a letter which is clear and concise and which the court received a medical letter from Dr. Cox (See attached Exhibit D).

d.     That I also obtained medical records from the doctor prior to sentencing with a final diagnosis that Petitioner Turner now has "normal behavior". (Ex.E)

e.     That I sent an associate to the jail on August 23, 2005 to talk to the jail

personnel and Petitioner Turner. Again, Petitioner was coherent, aware, and fully understood. (See attached Exhibit F).

f.  That I reviewed Petitioner's medical records and went to see his doctor at the Dothan Behavioral Medicine Clinic. (See attached Exhibit G). Neither the records nor the doctor indicated any legal insanity or medical condition that would prevent a trial or a plea.

4.  As to any breach of an agreement, it was my understanding that if Petitioner Turner provided substantial assistance to the government and the government accepted, the information as "substantial", then the government would move for a 5K1.1 departure. I was aware of the information provided to the government and up until I withdrew from the case I called the government prosecutor to inquire about the investigation and the much needed motion for departure from the government. I do not know the reason the government did not except the petitioner's assistance and why a 5K1.1 motion was not filed after the sentencing.

5.  As to the argument of "maximum sentence", there is no question that Petitioner Turner received the maximum sentence according to the court's interpretation of the guidelines, but not the maximum he could have received had we gone to trial. At the time of the second plea, it was my belief that Petitioner Turner would be in the 10 year range. This was based on my discussions with the prosecutor, my checking the guidelines and the fact that my investigation revealed that the trial court judge had never departed upward in a sentence. The petitioner is correct that he received no benefit by the plea. Since my withdrawal was immediate, I wonder if subsequent counsel moved to withdraw the plea or press for a 5K1.1 departure. At no time did I assure Petitioner Turner of the sentence he would receive or that the government would indeed file a 5K1.1 departure. At no time

6

did I coerce the petitioner into pleading guilty or failed to prepare for this case.

6.    As to the argument that I neglected this case for my work on the Richard Scrushy

case in Birmingham, such is not true. That case did not prevent attention to all matters of this case

and for carefully examining the evidence and understanding the different aspects of the case,

including a common sense approach to the petitioner's decisions.

7.    As to the allegations of not seeing the client or talking to him; This was untrue

because we did communicate with him and his wife. He is correct that his wife did call the State Bar

and I did meet with her. I informed her that I was going to withdraw as Kevin Turner's attorney

because of the unfounded complaint, but she apologized and asked me to stay on the case. I never

had any other complaints during the trial process.

This is the first I have heard of any blocked communications with any telephone

system.

8.    As to the argument that I failed to look into Petitioner's medical background, such

is not true. Not only did I obtain his medical and treatment records, but I also went to see Dr. Nelson

Handel in person. (See Exhibit G). These records were also forwarded to the Probation Officer. At

sentencing, I had to be careful to state the true facts about the petitioner's condition. I did not wait

to the last minute to talk to Dr. Handal since the medical record showed that I visited him on

December 3, 2003 and made several inquiries about the petitioner's medical and mental situation.

(See Exhibit G). Dr. Handal made it very clear to me that medication and treatment does not prevent

Petitioner Turner from seeking out young boys to engage in sex with. As Dr. Handal noted,

Petitioner was convicted of the same acts with juvenile boys in 1995 and Petitioner was suppose to

be on medication and treatment when this case occurred with another juvenile male.  Even

7

Petitioner's counselor, in a telephone interview, could only confirm that Petitioner is a pedofile and that he would continue. Such proved to be the case when Petitioner attempted a sexual move on an inmate during the pendency of this case. While it was brought out that Petitioner did have a bipolar diagnosis, such was not indicative of Petitioner being incompetent or that the bipolar condition caused the sexual actions or that the petitioner could be cured through medication or treatment of his homosexual, juvenile tendencies.

9.    I did not argue that the victim juvenile was an equal aggressor because I did not believe that to be the truth in light of the fact that:

    a.    The petitioner was approximately 38 years old at the time of the beginning of these events and the victim was 17 years of age;

    b.    That the petitioner has committed these same acts to others and was far more wiser;

    c.    That the petitioner secretly video taped their sex acts;

    d.    That the petitioner then placed these images on the internet as "blackmail" for the victim to continue the relationship, of which this does not have anything to do with the victim being an aggressor.

10.    As to the failure to argue the law and facts for the upward departures, I argued each point based on the facts and the cases. Unfortunately, the trial court disagreed. Such clearly left grounds for appeal on this issue.

11.    As to the petitioner's actual "innocence", such is absolutely not true. Beside his confession to the victim's lawyer, the petitioner also admitted the same to me. There was no doubt at the time, the victim was under the age of 18 years when the sex on the video occurred and that

such was not with the consent of the victim.

12.    Finally, I have no idea why the trial court imposed this sentence against Petitioner Turner. I certainly did not expect this type of sentence or else I would have proceeded to trial.. (See Exhibit H).

Done this the 11ᵗʰ day of October, 2007.

JAMES W. PARKMAN, III
PARKMAN, ADAMS & WHITE, LLC
505 20ᵀᴴ STREET NORTH
SUITE 825
BIRMINGHAM, AL 35203
(205) 244-1920
(205) 244-1171 FAX


STATE OF ALABAMA
COUNTY OF JEFFERSON

I, the undersigned authority, a Notary Public, in and for the said County and State, hereby certify that JAMES W. PARKMAN, III, whose acknowledged before me this day, that being informed of the contents of this AFFIDAVIT, he executed the same voluntarily on the date the same bears date.

Given under my hand and seal this the 11ᵗʰ of October 2007.

Pamela C-J Kume

NOTARY PUBLIC Comm. Exp 8-3-2010

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the original of the foregoing Affidavit with the United States District Court Clerk, and have sent a copy to the United States Attorney, P.O. Box 197, Montgomery, AL 36101, Susan G. James, Attorney for Petitioner Kevin Turner, 600 S. McDonough St, Montgomery, AL 36104, by placing a copy of same in the U.S. mail, postage prepaid, properly addressed on this the 10ᵗʰ day of October, 2007.

OF COUNSEL

9

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,       *

V.                              *   CR NO:03-219-S

KEVIN W. TURNER,                *

DEFENDANT.                      *

## MOTION TO SUPPRESS

COMES NOW the defendant, Kevin W. Turner, in the above styled cause, and moves this Honorable Court to suppress for use as evidence against the defendant any evidence related to or obtained by the search and seizure conducted at the premises known as 14 Leon Drive, Dothan, Alabama and 30 Leon Drive, Dothan, Alabama on or about August 20, 2000.  In support of said motion, Defendant assigns the following grounds:

1.    The search warrant made the basis of the search and seizure was overbroad and thus invalid;

2.    The search warrant was merely an "all records warrant", and thus illegal;

3.    The information for the probable cause was stale, thus exhibiting no reason to believe evidence was still there;

4.    The search warrant did not limit the scope of the search and seizure to the time frame when any

EXHIBIT
A

suspected criminal activity took place;

5. The search warrant did not limit the scope of the search and seizure to the alleged items for which the alleged probable cause was only established in the affidavit;

6. The search warrant allowed officers to seek items, and seize them, where no probable cause existed for the search or seizure;

7. The search warrant did not describe with sufficient particularity or specificity the items to be seized;

8. The information in the affidavit for the probable cause consisted of insufficient and invalid expert opinions;

9. The search warrant illegally allowed evidence to be seized which produced another alleged crime that was not charged until after the search and seizure;

10. The search exceeded the scope of the search warrant;

11. The officers acted in bad faith and with intent to seize items beyond the scope of the warrant;

12. The search warrant violated the particularity requirement of the Fourth Amendment;

13. The warrant was insufficiently particular since it authorized the seizure of hardware, but the affidavit

only allows probable cause to seize information;

14. The search and seizure violated Rule 41 of the Federal Rules of Criminal Procedure;

15. The affidavit upon which said search warrant was based is insufficient to support the issuance and/or execution of said search warrant; and

16. The issuance and execution of said search warrant violated and continued to violate the defendant's constitutional guarantees provided by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

Done this the 13th day of November, 2003.

Respectfully submitted,

JAMES W. PARKMAN, III (PAR032)
ATTORNEY FOR DEFENDANT
739 WEST MAIN ST
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon Ms. Susan Redmond, Assistant United States Attorney, P.O. Box 197, Montgomery, AL 36101 by placing a copy of same in the United States mail, postage prepaid and properly addressed on this the 13Th day of November, 2003.

OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,        *

V.                               *   CR NO: 03-219-S

KEVIN W. TURNER,                 *

DEFENDANT.                       *

## BRIEF AND ARGUMENT IN SUPPORT OF
## MOTION TO SUPPRESS

Generally, the Fourth Amendment to the United States Constitution clearly provides that any search warrant be issued only on a showing of probable cause "...supported by oath or affirmation" and that the warrant itself..."particularly describe the place to be searched, and the persons or things to be seized." **Berger v. New York**, 383 U.S. 41, 55, 87 S.Ct. 1873, 1882 (1967); **Texas v. Brown**, 460 U.S. 730, 747, 103 S.Ct. 1535, 1546 (1983); **Horton v. California**, 496 U.S. 128, 143, 110 S.Ct. 2301, 2311 (1990). This "particularity" requirement in search warrants protects privacy interests of the general public, prevents general searches and "...prevents the seizure of one thing under a warrant describing another." **Marron v. United States**, 275 U.S. 192, 196, 48 S.Ct. 74, 76 (1927); **Horton v. California**, 496 U.S. 128, 143, 110 S.Ct. 2301, 234

1

**(1990).** Furthermore, as has been stated by the United States Supreme Court:

> The scope of a search is limited to those places in which there is probable cause to believe an item particularly described in the warrant might be found... Similarly, once all of the items particularly described in a warrant have been found, the search must cease and no further invasion of privacy is permitted. **Horton v. California, 496 U.S. 128, 143, 110 S.Ct. 2301, 2311 (1990).**

## General Warrants

General warrants and searches have always been held illegal pursuant to the Fourth Amendment. **Anderson v. Maryland, 427 U.S. 463, 478, 96 S.Ct. 2737, 2747 (1976); U.S. v. Weber, 923 F.2d 1338, 1342 (9th Cir.1990); U.S. v. Abrams, 665 F.2d 541, 547 (1st Cir.1980).**

General warrants are condemned as a violation of the probable cause rule or the particularity requirement of the Fourth Amendment. **U.S. v. Hillyard, 677 F.2d 1336, 1339 (9th Cir. 1982). U.S. v. Abrams, 615 F.2d 541, 543 (1st Cir.1980).** In order to determine what constitutes a general warrant, one must examine:

1. Any time or date limitation established; **Lafayette Academy, 610 F.2d 1, 3-4 (1st Cir.1979);**

2

2. Specific description of what specific items are to be seized;

3. Whether the warrant leaves the discretion entirely to the officers as to what specific items are to be seized;

4. Whether the warrant authorizes seizure of all records, documents, or computer records,

5. Whether the warrant provides for an "explanatory rummaging in a person's belongings", or

6. Whether the warrant does not "prevent the seizure of one thing under a warrant describing another" **U.S. v. Abrams**, 615 F.2d 541 (1st Cir.1980); **U.S. v. Weber**, 923 F.2d 1338 (9th Cir.1991); **Standford v. Texas**, 379 U.s. 476, 85 S.Ct. 506 (1965).

7. Whether the warrant does not contain an explanation of the search strategy. **Nat'l Trading Camp v. U.S.**, 635 F.2d 1020, 1026 (2nd Cir.1980); **Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations**, U.S. Dept. of Justice **(July 2002)**. The strategy should also consist of an on-site search versus off-site search. **Searching and Seizing**, supra.

3

In examining the facts of this case, there were no time limitations under which records were to be seized; There was no specific description of which computer records were to be seized, despite specific allegations in the affidavit; Discretion was left entirely up to officers; and this warrant simply authorized wholesale seizure of computer instruments, data, records, discs, items, and files.

Search warrants do not permit officers to "...search for evidence of other crimes but only to search for and seize evidence relevant..." to the facts contained in the affidavit. **U.S. v. Andressen**, 427 U.S. 463, 481-482 (1976).

**Particularity Requirement**

Since a warrant must particularly describe the things to be seized, such failure renders the warrant "... indistinguishable from the general warrants repeatedly held by this court". **U.S. v. Kimbraugh**, 69 F.3d 723, 727 (5th Cir. 1995); **U.S. v. Kow**, 58 F.3d 423, 427 (9th Cir. 1995); **U.S. v. King**, 227 F.3d 732, 750 (6th Cir.2000). In this case the warrant, based on the specifics contained in the affidavit, could and should have contained detailed particularity of the computer items to be seized, instead of the generic classification and language contained therein. **U.S. v.**

4

**Kimbraugh**, 69 F.3d 723, 727 (5th Cir.1995); **U.S. v. Kow**, 58 F.3d 423, 427 (9th Cir.1995). The plaintiff knew in detail the precise computer records it was looking for, but instead used generic terms. **U.S. v. Shilling**, 826 F.2d 1365, 1369 (4th Cir.1987).

Specifically, it also required "the likelihood that evidence sought is still in place and, hence, that information in support of the warrant is not stale." **U.S. v. Musson**, 7=650 F.Supp. 525, 534 (U.S.D.C. 1986); **U.S. v. Johnson**, 461 F.2d 285 910th Cir.1972); **U.S. v. Tehfe**, 722 F.2d 1114, 1119 (3rd Cir.1983); **Andressen v. Maryland**, 427 U.S. 463, 478 (1976).

"Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time." **U.S. v. Johnson**, 461 F.2d 285, 287 910th Cir.1972). In Defendant's case, approximately two years had passed between the isolated incident of e-mail with a minor and the date of the search on August 2, 2000.

The failure of the plaintiff to state a time frame in the warrant also violated the "particularity rule". While a time frame is mentioned in the affidavit, the plaintiff "...did not limit the scope of the seizure to a time frame within which the

5

suspected criminal activity took place". **U.S. v. Kow**, **58 F.3d 423, 427 (9th Cir.1995)**. This is exactly the situation in this case, since the plaintiff did have specific time periods listed in the affidavit. **U.S. v. Shilling**, **826 F.2d 1365, 1369 (4th Cir.1987)**; **U.S. v. Ford**, **184 F.3d 566, 576 (6th Cir.1999)**.

In a case on point dealing with computer searches it was recognized that "computer programs store information in a wide variety of formats" and contain a wide variety of formats, programs and files. **U.S. Carey**, **172 F.3d 1268, 1275 (10th Cir.1999)**. Therefore, in order to prevent wholesale rummaging, not only should the search be limited to the screen names, key words on specific file names contained in the affidavit, but the search method should also be reviewed by the magistrate. **U.S. Carey**, **172 F.3d 1268, 1272, 1275, and 1276 (10th Cir. 1999)**. Specific information was contained in the affidavit, however, the search herein consisted of a wholesale search of the computer files and folders.

Furthermore, the warrant should be particular as to whether the search was for "...the computer hardware itself or merely the information that the hardware contains". **Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations**, U.S. Dept. of Justice (July 2002).

**Overbreadth**

The "overbreadth rule" is violated when the widespread seizure of items is not justified by the warrant or affidavit. **U.S. Kow**, 58 **F.3d 423, 427 (9**[th] **Cir.1995); U.S. v. Hunter**, 13 **F.Supp 574, 583-584(U.S.D.C. 1998)**. It is simply a warrant that contains broad language. **U.S. v. Lebron**, 729 **F.2d 533, 537 (8**[th] **Cir.1984); U.S. v. Musson**, 650 **F.Supp. 525, 532 (U.S.D.C.Col. 1986)**. In order to pass constitutional muster, "...the search warrant itself, or material incorporated by reference, must have specified the purpose for which the computers were seized and delineated the limits of their subsequent search". **U.S. v. Hunter**, 13 **F.Supp.2d 524, 584 (U.S.D.C.1998)**. Such was not done in this case. While the affidavit for the search warrant did contain some specific evidence, the affidavit was not incorporated or made a part of the general search warrant. Such an affidavit can only cure a general or overbreadth warrant when "(1) The warrant expressly incorporated the affidavit by reference **and** (2) The affidavit is attached physically to the warrant." **United States v. Towne**, 917 **F.2d 517, 544 (9**[th] **Cir.1993); U.s. v. George**, 975 **F.2d 72, 76 (2**[nd] **Cir. 1992)**. In Defendant's case, neither was done by the searching officers.

7

A "general warrant" or complete record seizure may also be authorized where probable cause establishes that an "entire business is merely a scheme to defraud or that all of the business records are likely to evidence criminal activity". **U.S. v. Brien**, 617 F.2d 299 (1st Cir.1980); **U.S. v. Kow**, 58 F.3d 423, 427 (9th Cir.1995); **U.S. v. Musson**, 650 F.Supp.525, 535 **(D.Crol.1986)**. The defendant's business was subject to search on the warrant, but no evidence existed or was found that it was a complex criminal scheme.

As it strictly pertains to computer searches, it has been held that:

> The underlying premise in **Carey** is that officers conducting searches (and the magistrates issuing warrants for those searches) cannot simply conduct a sweeping, comprehensive search of a computer's hard drive. Because computers can hold so much information touching on many different areas of a person's life, there is a greater potential for the "intermingling" of documents and a consequent invasion of privacy when police execute a search for evidence on a computer. See **id at 1275, see also United States v. Tamura**, 694 F.2d 591, 595-596 (9th Cir. 1982). Thus, when officers come across relevant computer files intermingled with irrelevant computer files, they "may seal or hold" the computer pending "approval by a magistrate of the conditions and limitations on a further search" of the computer. **Carey, 172 F.3d at 1275.** Officers must be clear as to what

8

it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant. **Id at 1276.** **U.S. v. Walser**, **275 F.3d 981, 986 (10th Cir.2001).**

This concept was also upheld in the case of **U.S. v. Tamura**, **694 F.2d 591, 595-596 (9th Cir.1982)**; **U.S. v. Carey**, **172 F.3d 1268, 1275 (10th Cir.1999)**; **U.S. v. Shilling**, **826 F.2d 1365, 1369 (4th Cir.1987).**

Thus, where search warrants are not sufficiently particularized and overbreadth in nature, then a total, "wholesale" suppression can be granted. **U.S. v. Kow**, **58 F.3d 423, 428 (9th Cir.1995)**; **U.S. v. Liu**, **239 F.3d 138, 140 (2nd Cir.2000).**

**Probable Cause**

The Fourth Amendment provides that a search warrant cannot be issued unless there exists probable cause. Therefore, a warrant "must clearly state what is sought and its scope must be limited by the probable cause on which the warrant is based." **Solid State Devices, Inc. v. U.S.**, 130 F.3d 853, 856 (9th Cir.1997); **U.S. v. Hendricks**, 743 F.2d 653 (9th Cir.1984). **Illinois v. Gates**, 462 U.S.213, 103 S.Ct. 2317 (1983); **State of Washington v. Nordlund**, 113 Wash. App.171, 183-184 53 F.3d 520, 525-526 (Wash. App. D.V.2 2002). Simply put, a warrant

9

cannot be enlarged from the probable cause used for its establishment. **U.S. v. Weber**, 923 F.2d 1338, 1345 (9th Cir.1999); **Maryland v. Garrison**, 480 U.S. 29, 84 (1987).

In order to help establish the necessary probable cause for a wholesale computer search, the plaintiff presented expert opinion. However, in order for the expert's opinion to have any relevance, "the affidavit must be drafted with the facts of this case or this particular defendant in mind". **U.S. v. Weber**, 923 F.2d 1338, 1345 (9th Cir.1991). The defendant contends that the expert portion of the affidavit was nothing more than a "rambling boilerplate recitations which neither addressed the facts of the defendant's case nor gave any specific conclusions about the facts or the defendant. **Weber supra at 1345 (1978); Zurcher v. Daily**, 436 U.S. 547, 565, 98 S.Ct. 1970, 198).

Thus, the "foundationless expert testimony may have added fact to the affidavit, but certainly no muscle". **Weber supra at 1346.**

While the expert opinion in this affidavit did discuss pornography, such was only a general conclusion and was not based on any particular facts. **Sovereign News Co. v. U.S.**, 690 F.2d 569, 575 (6th Cir.1983). Therefore, when the computer

10

was later searched and approximately seven hundred pornographic pictures seized, such was not based on sufficient probable cause. Furthermore, when the pornographic pictures were first discovered, the search should have immediately ceased until further approval by the magistrate was obtained. **U.S. v. Carey**, 172 F.3d 1268, 1275 (10th Cir. 1999); **U.S. v. Walser**, 275 F.3d 981, 987 (10th Cir. 2001); **Horton v. California**, 496 U.S. 128, 141, 110 S.Ct. 2301, 2310 (1990)b.

Finally, the defendant contends that the government agents "flagrantly disregarded" the terms and scope of the warrant/affidavit by conducting a general or widespread seizing of items for items "that were not within the scope of that warrant". **U.S. v. Liu**, 239 F.3d 138, 140 (2nd Cir. 2000). As such, a blanket suppression should be ordered. **Horton supra at 140.**

**Rule 41**

Rule 41 provides that, unless otherwise specified the search pursuant to a warrant must be conducted within a specified time no longer than ten days of its issuance. Federal Rules of Criminal Procedure, Rule 41 (e)(2)(a). In the instant case, the defendant contends that the officers searched and seized the computer equipment, disks, records, and files.

11

However, the search and seizure of the hard drives, disks, files and software did not take place until after the search warrant expired. Since the computer equipment was in the possession of law enforcement, there no longer existed any "exigent circumstances or practical reason to permit officers to rummage through all of the stored data". **U.S. v. Carey**, 172 **F.3d 1268, 1275 (10**[th] **Cir.1999)**. Another warrant should have been attained in this case. **U.S. v. Walsen**, 275 **F.3d 981, 987 (10**[th] **Cir.2001); U.S. v. Brunette**, 76 **F.Supp. 20, 30 (D.Me.1999)**.

## Standing

The defendant contends that he has standing concerning his motion to suppress since the search was of his home, office, and personal computer system. **U.S. v. Runyun**, 275 **F.3d 449, 458 (5**[th] **Cir. 2001); Steagald v. U.S.**, 451, **U.S. 204, 212, 101 S.Ct. 1642, 1647 (1981); U.S. v. Abram**, 830 **F.Supp. 551, 554 (D.C.**

12

**Kan.1993).**

Dated this the 13th day of November, 2003.

Respectfully submitted,

JAMES W. PARKMAN, III (PAR032)
ATTORNEY FOR DEFENDANT
739 WEST MAIN ST
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon Ms. Susan Redmond, Assistant United States Attorney, P.O. Box 197, Montgomery, AL 36101 by placing a copy of same in the United States mail, postage prepaid and properly addressed on this the 13th day of November, 2003.

OF COUNSEL

13

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| PLAINTIFF, | * | |
| V. | * | CASE NO: CR-03-219-S |
| KEVIN TURNER, | * | |
| DEFENDANT. | * | |

### DEFENDANT'S REVISED OBJECTIONS TO PRESENTENCE REPORT

PART A: THE OFFENSE

PARAGRAPH 14: THE OFFENSE

(Charges and Convictions)

Defendant objects to the inclusion of this paragraph regarding alleged contact between Defendant Turner and another inmate, Jeffrey Spurlock.. Defendant has not been charged with any offense related to this allegation. The inclusion of the said allegation can only be an effort by the Government to cause prejudice against Defendant Turner for sentencing purposes.

PARAGRAPH 37: SPECIFIC OFFENSE CHARACTERISTICS

Defendant Turner objects to the five level increase pursuant to USSG §2G2.2(b)(2).

There is simply no evidence that any distribution was for "profit" or other thing of value". Therefore,

EXHIBIT
B

this is an improper enhancement.

Dated this the 10th   day of June, 2005.

                         _____

JAMES W. PARKMAN, III(PAR032)
ATTORNEY FOR DEFENDANT
739 WEST MAIN ST
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES OF AMERICA,    *

   PLAINTIFF,       *

V.            *  CASE NO: CR-03-219-S

KEVIN TURNER,      *

   DEFENDANT.     *

## DEFENDANT'S OBJECTIONS TO PRESENTENCE REPORT

PARAGRAPHS 35: SPECIFIC OFFENSE CHARACTERISTICS

Defendant Turner objects to the two level increase pursuant to USSG § 2G2.2 (b)(1). To allow this enhancement of two levels is in violation of the prohibition recently decided in **Blakely v. Washington, 2004 WL 1402697 (U.S. Wash. June 24, 2004),** wherein this sentencing enhancement would be the result of a judicial determination and not one determined by a jury beyond a reasonable doubt or stipulated to by Defendant Turner. Furthermore, the objection is based on the fact that there is no proof of any of the persons depicted in any images. There is also no proof that such images are not digitally enhanced. Therefore, any increase is only based upon opinion, surmise and conjecture.

PARAGRAPH 36: SPECIFIC OFFENSE CHARACTERISTICS

Defendant Turner objects to the five level increase pursuant to USSG §2G2.2(b)(2). To allow this enhancement is in violation of the prohibition recently decided in **Blakely v. Washington, 2004 WL 1402697 (U.S. Wash. June 24, 2004),** wherein this sentencing enhancement would be the result of a judicial determination and not one determined by a jury beyond a reasonable doubt or stipulated to by Defendant Turner. There is simply no evidence that any distribution was

for "profit" or "other thing of value".  Therefore, this is an improper enhancement.

PARAGRAPH 37: SPECIFIC OFFENSE CHARACTERISTICS

Defendant Turner objects to the four level increase pursuant to USSG §2G2.2 (b)(3).  To allow this enhancement  is in violation of the prohibition recently decided in **Blakely v. Washington, 2004 WL 1402697 (U.S. Wash. June 24, 2004)**, wherein this sentencing enhancement would be the result of a judicial determination and not one determined by a jury beyond a reasonable doubt or stipulated to by Defendant Turner.  Furthermore, Defendant contends that there exists no proof of any age or date of birth of any alleged person depicted.  Furthermore, there is no proof that any of the images have not been digitally or graphically enhanced.  Defendant further objects that such images are sadistic or masochistic.

PART A: THE OFFENSE

Defendant Turner objects to paragraphs 15, 16, 17, 26 and 27 and does not stipulate to the provisions contained therein as violative of the decision in **Blakely v. Washington, 2004 WL 1402607 (U.S. Wash. June 24, 2004)**.

PART E: FACTORS THAT MAY WARRANT DEPARTURE

PARAGRAPHS 92, 93 AND 94

To allow this enhancement  is in violation of the prohibition recently decided in **Blakely v. Washington, 2004 WL 1402697 (U.S. Wash. June 24, 2004)**, wherein this sentencing enhancement would be the result of a judicial determination and not one determined by a jury beyond a reasonable doubt or stipulated to by Defendant Turner.

Defendant objects to this portion of the sentencing report since it fails to include the plea agreement filed pursuant to Rule 11 (c), which this defendant relies and stands on.

Furthermore, there was no consideration given for the treatment of any illness or physical

problems for which the defendant has voluntarily sought treatment.

Dated this the 17ᵗʰ day of August, 2004.

JAMES W. PARKMAN, III(PAR032)
ATTORNEY FOR DEFENDANT
739 WEST MAIN ST
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the United States Attorney by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 17ᵗʰ day of August, 2004.

OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

UNITED STATES OF AMERICA,      *

    PLAINTIFF,          *

V.                            *     CASE NO: CR-03-219-S

KEVIN TURNER,           *

    DEFENDANT.        *

## DEFENDANT'S REVISED OBJECTIONS TO PRESENTENCE REPORT

PARAGRAPHS 35: SPECIFIC OFFENSE CHARACTERISTICS

Defendant Turner objects to the two level increase pursuant to USSG § 2G2.2 (b)(1). To allow this enhancement of two levels is in violation of the prohibition recently decided in **Blakely v. Washington, 2004 WL 1402697 (U.S. Wash. June 24, 2004),** wherein this sentencing enhancement would be the result of a judicial determination and not one determined by a jury beyond a reasonable doubt or stipulated to by Defendant Turner.  Furthermore, the objection is based on the fact that there is no proof of any of the persons depicted in any images.  There is also no proof that such images are not digitally enhanced.  Therefore, any increase is only based upon opinion, surmise and conjecture.

PARAGRAPH 36: SPECIFIC OFFENSE CHARACTERISTICS

Defendant Turner objects to the five level increase pursuant to USSG §2G2.2(b)(2).  To allow this enhancement of two levels is in violation of the prohibition recently decided in **Blakely v. Washington, 2004 WL 1402697 (U.S. Wash. June 24, 2004),** wherein this sentencing enhancement would be the result of a judicial determination and not one determined by a jury beyond a reasonable doubt or stipulated to by Defendant Turner.  There is simply no evidence that any

distribution was for "profit" or "other thing of value". Therefore, this is an improper enhancement.

PARAGRAPH 37: SPECIFIC OFFENSE CHARACTERISTICS

Defendant Turner objects to the four level increase pursuant to USSG §2G2.2 (b)(3). To allow this enhancement of two levels is in violation of the prohibition recently decided in **Blakely v. Washington, 2004 WL 1402697 (U.S. Wash. June 24, 2004)**, wherein this sentencing enhancement would be the result of a judicial determination and not one determined by a jury beyond a reasonable doubt or stipulated to by Defendant Turner.   Furthermore, Defendant contends that there exists no proof of any age or date of birth of any alleged person depicted.  Furthermore, there is no proof that any of the images have not been digitally or graphically enhanced. Defendant further objects that such images are sadistic or masochistic.

PART A: THE OFFENSE

Defendant Turner objects to paragraphs 15, 16, 17, 26 and 27 and does not stipulate to the provisions contained therein as violative of the decision in **Blakely v. Washington, 2004 WL 1402607 (U.S. Wash. June 24, 2004)**.

PART E: FACTORS THAT MAY WARRANT DEPARTURE

PARAGRAPHS 92, 93 AND 94

To allow this enhancement of two levels is in violation of the prohibition recently decided in **Blakely v. Washington, 2004 WL 1402697 (U.S. Wash. June 24, 2004)**, wherein this sentencing enhancement would be the result of a judicial determination and not one determined by a jury beyond a reasonable doubt or stipulated to by Defendant Turner.

Defendant objects to this portion of the sentencing report since it fails to include the plea agreement filed pursuant to Rule 11 (c), which this defendant relies and stands upon.

Furthermore, there was no consideration given for the treatment of any illness or physical

problems for which the defendant has voluntarily sought treatment.

PARAGRAPH 14: THE OFFENSE

(Charges and Convictions)

Defendant objects to the inclusion of this paragraph regarding alleged contact between Defendant Turner and another inmate, Jeffrey Spurlock.. Defendant has not been charged with any offense related to this allegation. The inclusion of the said allegation can only be an effort by the Government to cause prejudice against Defendant Turner for sentencing purposes.

Dated this the 31ST day of MAY, 2004. 2005

_____
JAMES W. PARKMAN, III(PAR032)
ATTORNEY FOR DEFENDANT
739 WEST MAIN ST
DOTHAN, AL 36301
(334) 792-1900
(334) 712-1352 FAX

1

Jim,                                          8-17-05

These idiots have me in lock down And Are gonna
write A diciplinary on me. Right now, I have A
Spotless Record, I've been in no trouble.

Jim, if they would give me 5 minutes with An honest
Officer in the Nurses Station, I can prove that they
Are not giving me Any Bi-Polar medication. Here is
how I can prove it. You have a ceetified letter saying
that As of Aug 10th I was on Depacote. Well the
Officers push Around A cart that has everyone's medication
in it. They have these plastic containers with the
meds All sorted out for the whole week for each inmate
The container looks like this:    it has 4 soperate
slots for each day of the week. Each of the 4 slots
is for certain times of the day. 6Am, 12pm, 6pm
And 9pm. I get meds At 6Am And 6pm. I showed
one inmate And two guards my container last night And
this morning, and they all verified that No "Depacote" was
in my container At All. No depacote is in the Cart they
push Around. But they sent a letter saying I was on
it since the 10th. Jim, we can nail them
Right now while they haven't thought about covering
their Ass and putting Depacote in my Medicine Dispenser
I swear to you they Are lying, And I can prove it
Right now! Today. Iabc have 2 inmates who will back me up.

Jim, here are the exact dates of what has
happened, And what this idiot Dector has done, and
Also some of the things he has said.

EXHIBIT
C

On June 25th, I saw Dr. Cox and told him the Lithium was giving me constant ~~the~~ diarreha. I asked him if he would put me on Triliptol. It's a new drug, and another one of Dr. Cox's patients was Inmate Jamie Byrd who is also Bi-Polar. His medicine is payed for by the State because he is DOC. Dept of Corrections. He's on Trilipol.

I asked Dr. Cox about Trilipol ~~or Trilipol one~~ ~~this second one~~, and he told me for the first time that quote, "it is too expensive," and he asked me if I had tried Depacote. I told him all I've used was lithium, so he said let's try Depacote. I agreed. This is very important now. I asked Dr. Cox if he was aware that you have to be gradually taken off Lithium. You decrease the dosage until you are at a level where you can stop. Jim, if you want specific details, call Dr. Handel to help us on the details of coming off Lithium. I was on 1200 mg.

Dr. Cox said he was aware of this, but yet he took me off Lithium completely on June 26th or 27th, it took a day or two to get the Depacote, Anyway, he took me off Lithium 1 or 2 days later and put me on Depacote. "No gradual reduction of Lithium at all." I don't know what those side effects could be. Dr. Handel will know.

So on approx. June 26th I started Depacote. By Friday that week, Fri the 28th, the Depacote was giving me indigestion and heart burn no matter what I ate.

My diet was the same old Jail Food, the only thing that had changed was the Medication.

So, on June 28th, I ~~had already~~ quit taking the Depacote. Now here is where you start counting the Days. I've been (4 days) without as of Aug 2nd ~~For (4) days after~~ On August 2nd I saw Dr. Cox again and told him the Depacote was "burning me up."

I asked once again for Trilipto1. He said for the second time, "No, it's too expensive." I told him "I'm a Federal inmate and the US Marshall service paid for my medication." He verified this with ~~this~~ Nurse Singleton in front of me. She agreed.

The he said, your on enough medication now with the Prozac and Seroquel and he wanted to see if that Alone would treat my Bi-Polar.

Remember, Dr. Cox is a GP, and Dr. Handel is a brilliant Psychiatrist, and Jim, Dr. Handel gave me several tests before deciding what meds to give me. He was not just guessing which that's all Dr. Cox can do.

I told Dr. Cox, quote "I don't agree with this idea, because I knew how I felt before Dr. Handel diagnosed me as Bi-Polar." It did not change his mind so I left on August 2nd with only Prozac and Seroquel on the Medication Cart.

On Agust 5th I think, 5th or 6th, I wrote to Nurse Singleton telling her I was very Depressed, and irritated, and angry and needed so medication For Bi-Polar. I've been (8 day) now with no Bi-Polar

medicine. She came to see me the day after she got my Request And All she did was holler at me from the Pod entrance across the Day Room to my Room. Quote, "MR. TURNER, do you have thought of commiting Suicide? do you need to go up front?" I said, "No." She then said quote, "if you think your gonna commit Suicide, will you let me know?" I said, "Yes." This was so stupid.

Anyway, I'm (8 days) without, And August the 9th I go see DR. Cox. Now I'm (11 days) without Bipolar medicine. I ask for Trilipta l again. DR. Cox makes a "Big Issue" out of me wanting off Lithium, then I wanted off Depacote, but I only wanted off because the side effects were getting to me. Nothing is wrong er Abnormal About that is it, Jim?

Jim, he told me then that, quote "I can put you back on Lithium, otherwise there is nothing I can do for you anymore. When you go to Prison, maybe they can help you." He said this word for word Jim, I promise!

I have court on the 11th you saw me. I had been (13 days) off Bipolar medicine.

Cowdley called Nurse Singleton shortly after he was told, because when I got back to the jail, she had already been looking for me. She did come back Around 3pm that day, and I asked her if she met MR. Cowdley. She said she only talked to him on the phone. I asked her when I would

get put back on Bi-Polar Medication. She said very sarcastically, "whenever Dr. Cox decides to write a prescription."

So, last night, I'm called to the doctors office. I thought he was going to help me. He only asked me how my Diarrhea was. I asked him to increase my Fiber Tabs to 2 pills, 2 times a day. He Agreed, the told me that was it.

Well, I started Asking About me Bi-Polar medicine. We started Arguing. I told him the cost wasn't his concern. he Agreed.

Then that witch Nurse Singleton started talking above me, And I told her very Stern to let me finish talking. She said she was gonna have me locked down, no to mess with her! And Jim, I know she could see the Devil in my eyes, but I couldn't help it.

I promise, I never called Anyone names, nor did I curse. I just spoke loudly, and it wasn't even hollaring.

Last night, I have been off Bi-Polar meds for 18 Days, Friday when you get this letter will be 21 days. ~~Whatever anything that he just started~~ ~~me many days. I've been without meds.~~ 30 days A month will be gone even I have Court in 9 days! What's gonna happen then?

6

Do something Jim. Please

MR. Bowers is the JAIL Administrator
~~Sheriff~~ Sheriff Bill Franklin is the Top dog.

Due to being locked down today, 8/17/05 —
I will Not be Allowed to buy SNACKS FRom the
JAIL. Today is ORDER DAY, AND FRiDAY they
deliver. I still turned in a slip.
Store wont Run again for 2 weeks.
I cannot go 2 weeks with No SNACKS. They
don't feed enough for that.

Thanks

Kevin

P.S.
So, the letter that says I have been on Depacote
is a straight out lie, AND I can prove it
Right Now, if I get the chance. Help me.

Jim,                                           8-18-05

The 2 Dates on my letter need to be changed. After I sent it, I realized I forgot that July comes before August, not June.

So in the letter, change June 18th to July 19th And June 25th to July 26th. Everything else stays the same.

I'm slipping. My old thoughts and desires are coming back. I'm dreaming bad things, unhealthy things. These SOB's are messing me up.

Except for my slip at Montgomery Jail, I've done good the whole time I've been locked up. Never any problems with any officer and no problems with anyone else to speak of that would mess up my good Inmate Record. Now these idiots have me so messed up I can't think straight, I've gotten myself "Locked Down" and I should have my Disciplinary Hearing in the next day or so. Actually night, I think they do these hearings on 2nd or 3rd shift.

Locked in a room with the door shut is extremely Hot and unbearable. I smell. They haven't told me I could shower. My bed is soaked with sweat!

The weather man tells people to bring their "Pets" inside out of the heat, yet these people lock us up in it as a way to punish us. It's unhealthy and barbaric. There is no Air Conditioning in the PODs of this Jail, So it's HOT!

Jim, you're in the Spot light since your recent victory. Your words carry the weight of a

2

Locomotive. ~~to start~~ I wish you would try to change things at this Jail for me and the rest of the suffering inmates. Not everyone can stand the heat, I'm one of them, ask Mary.

I've seen inmates with bed soars so bad they look like they have a disease.

This Jail is New, and when it was built, Sheriff Bill Franklin made his big speach that it wouldn't be Air Cond, cause it ain't no Holiday Inn. It isn't a POW camp either.

Franklin is a smart man though. He is in his early 50's. Dresses in Nice Suits like an Attorney or businessman. Yet what he does in here is cruel.

Please get me out of here as soon as possible.

What are we gonna do about court on the 26th. I might be OK, wont know til that morning. Still no medicine. Jim, they're lying I swear. If you were here, I could show you proof, There are 2 guys (inmates) who have witnessed it, and one Gurad who is a good guard who has already tried to get me out of lock down.

I wont get my store this week, and Mary can tell you that when I get real hot and my Blood Sugar level drops, I get the shakes and have to get something sweet immediately. I'm boederline Diabetic and the weight I've gained has made all

my symptoms worse. My dad is the same way but he is a Diabetic, so is his brothers and was his Father.

I don't mean to sit here and cry about everything, but these people have lied to you, to Cowoky, to my wife. I can prove that certified letter wrong. Whoever signed it would probably be terminated after I finished.

They are saying in so many words (with that letter) that I am lying. Judge Fuller probably thinks I'm lying now. I need to prove to all of you that the letter is false, and I can.

This morning Jim, when they brought my meds, there was still no Depacote in there which they say I've been gettin since the 10th. Help me straighten out this mess.

Whoever signed the letter should take responsibility for their actions, as I have too by being locked down for not being able to control myself the other night ~~and~~ because of no medicine, and getting in trouble.

Can't you see how everything snowballs. Please send someone here to fix this. I don't trust Cowoley, he would love to turn all this on me, and he would never give me a chance to say anything.

Sincerely,
Ken

Jim,                                                    8-23-05

My meeting with Mark was OK, I don't feel like we Accomplished Anything. I did find out that this Man I've been calling Dr. Cox, his real name is Stevin Smith who works for A Doctor Cox, And Mr. Smith is A NURSE!

Can you believe that crap. So every kind of medicine change or treatment given to me in this jail was ordered or changed by A Male Nurse!

I told you that certified letter was A lie, Although the Nurse here told Mark it was A Typo! Yea, the whole letter was A Typo!

They said they increased my Prozac to 40 mg. Jim, Dr. Handle put me on 40 mg. 3 years Ago.

They told Mark, they were using the Prozac and Seroquel to treat my Bipolar. It wasn't used to treat it before, why do they think it will treat it now, because I don't take Lithium or Depakote.

Jim, I think I'm Bipolar II. Seroquel is used to treat Bipolar I, but in A much larger dose than they give me. I'm on 200 mg. The Article I gave Mark to give to you says 300 mg. to 600mg. Handel gave me Seroquel to help me sleep. 200mg. is barely working for that. It needs increased Also.

1st lets get this straight. "Prozac" Does not treat Bipolar in any form or fashion. It is An Antidepressant. So all they are giving me is Seroquel. So, why did Handel give me Lithium? Even if Seroquel

will treat me, the Dosage they are giving me is definitely not enough. I know this cause I know how I feel right now!

Look, I got locked down on the 16th for raising my voice to ~~●~~ Nurse Singleton + Nurse Mr. Smith, I raised my voice because I couldn't get them to understand, that they were saying I was getting Depakote, but yet they weren't giving it to me. That's why I raised my voice. It was like talking to a brick wall. I said, "Yes you say you are giving me Depakote, but I never get the pill like they were forgetting to give it to me. I got locked down for that, and my statements about the letter were true, until they talk to Mark and tell him the letter was a typo. So, do you think I should remain in lockdown? Sometimes you have to speak loud to make people listen.

Whatever they say they are using to treat me isn't working. Maybe you can get me another Psychological evaluation. At the least, I guess I need to be back on Lithium with something very strong to counteract Diarrhea! Please bring those articles back to me Friday. Make yourself some copies.

See if you can get me out of lockdown.    Thanks

Jim, do you think that maybe Judge Fuller was so unfair because the Victim moved to Enterprise and he and his new wife had a still born baby and that was plastered in the Dothan Eagle for everyone to read.

Would it make any difference that the Victims brother in Dothan still was doing business with me. Obviously he doesn't think bad of me.

Why can't any of the Victims sexually explicit emails be brought in front of the court as they do with my letters or email

Jim, I'm not asking you to answer this question, it's just something to think about Since Mark is a Paralegal soon to be an attorney, do you think your office could use a Paralegal to fill his

current position. Mary is a Paralegal, and a Magistrate, and when she worked with you and Stormley, she was bonded and was even a Private Investigator. She works very hard. She makes no mistakes when typing or preparing legal documents. She is very loyal and would keep whatever she was doing to work for you. She is very personable and caring, and she's 48 years old working for Manpower out of Panama City just so she can work. Working for Tim Parkman would be a blessing and a Dream come true. She has talked about working for you for the past 10 years and you won't find a better person than this woman. If you might consider this, you can't imagine the Burden it would lift from this descent hard working and God fearing woman. You know this woman well.

3.

Jim, wasn't there a decision from the Blakely vs. Washington case concerning "Upward Departures." Didn't it say that Upward Dep. had to be agreed to in a plea, or had to be found guilty by a jury? That's what started all this Guideline mess.

So the way I understood you Friday is we are trying to get 10 years now, right? OK! And then are we still looking to get this 3 level downward departure from the Govn. and and an additional 1 level down for acceptance of responsibility? Would you send me what the 14th + 15th Amendment say please?

One last thing. What can we do if anything about the testimony that the victim has told. Yes alot of it is true, but some of it is not.

Especially the part about me Blackmail him for sexual favors. He made many of the deals and offered sexual favors and he knew that was my downfall and he used it to gain from me.

By the end of the relationship, there was no Blackmail. There was so much Hatred from both of us that we were trying to destroy each other. He of course had the most leverage playing the innocent boy. After the relationship started and had been going for some time, he wanted me to start a Computer Business where he could work and he knew that would mean being around me daily vs us meeting once a week for a trade. Some form of sex for Computer Equipment. He made those deals, he wanted to do what we did, it is in his emails. Talk with soon Jim, Thanks.        Kevin

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### United States Courthouse
One Church Street, A-300
MONTGOMERY, ALABAMA 36104

Mark E. Fuller
Chief Judge

TELEPHONE (334) 954-3640
FAX (334) 954-3649

August 16, 2005

Ms. Susan Redmond
Mr. John Harmon
Office of the U.S. Attorney
One Court Square
Montgomery, AL 36104

Mr. James Parkman
739 West Main Street
Dothan, AL 36301

RE:    *USA v. Kevin Turner*, 1:03-cr-219-F

Dear Counsel:

As a follow-up to our telephone status conference held this date, please find enclosed the letter I had received from Nurse Smith and Dr. Cox regarding the current medicine regime Mr. Turner is under for his bi-polar disorder while in local custody.

In this afternoon's mail, I also received the enclosed, three-page letter from Mr. Turner regarding his view of the events following the sentencing hearing which was continued from August 11.

As is my policy, I would require the clerk to place the original copies of any correspondence I receive in the court file and am forwarding a copy to counsel.

With best regards, I am

Respectfully yours,

Mark E. Fuller
Chief United States District Judge

MEF/mdd
Enc.

EXHIBIT
D

**DRS. HIGHLEY & COX P.C.**
440 Taylor Road Suite 3100
Montgomery, Alabama 36109
Telephone (334) 277-5900
Fax (334) 277-6049

August 10, 2005

Debbie Brewer
U.S. Marshall's Office

From: Steven Smith, CRNP

RE: Kevin Turner

Dear Madame:

I have seen Mr. Turner repeatedly over the past several weeks at sick call. He came to us with a diagnosis of Bipolar Disorder. He wanted to be taken off of Lithium because of diarrhea. I honored his request and replaced Lithium with Depakote. He returned and claimed Depakote caused indigestion. He asked that he be taken off Depakote and wanted to be placed on Trileptal, a seizure medicine. I was told that he had a pod-mate who was on Trileptal and was able to sleep all of the time. I denied his request. He is currently on two psychotrophic medications, Depakote which is indicated for Bipolar disorder and Prozac for depression. He is reported to have normal behavior on observation in the pod on this current medication regimen.

Sincerely,

_Steven Smith CRNP_                                    _H. Cox_

Steven M. Smith, CRNP                          Harold W. Cox, M.D.

SMS/ng

The Honorable Judge Fuller,                                         8-15-05

Today is Monday August 15th, 2005. I want to apologize for being an emotional wreck last Thursday August 11th, on my scheduled sentencing day. I know my Attorney Mr. Parkman explained to you that morning my emotional state of mind was shakey, and that the Doctor here at Elmore Co. Jail had taken me off my Bi-Polar medication completely.

I want to thank you for continuing my court date to August 26th to allow me to be back on the medicine for a couple of weeks prior to my new court date. But I also want to tell you the chain of events that led Dr. Cox to his decision to take me off the medicine. I think you will be surprised at his reasoning.

I was told by my Attorney and my family that you ordered Mr. Conoley to personally come to the Elmore Co. Jail and straighten out my medication. I found out last Thursday at around 2:00 pm from Nurse Singleton, that in fact Mr. Conoley did not come to the jail, and that he only made a phone call to the jail. If he was in fact ordered to visit the jail in person, I believe that alone would show the urgency and importance the medicine is and the immediate concern of everyone involved.

But when I saw the nurse on Thursday, I asked when my medication would start back, and she told me whenever Dr. Cox decided to write a prescription. Four days later, I still haven't received any medicine for Bi-Polar, haven't spoken to a nurse or the doctor, and don't know of any scheduled appointment.

When I saw Dr. Cox four weeks ago, I told him the Lithiu

had given constant diarrhea for the last year, and was also making me bleed. So he immediately took me off Lithium, and substituted it with Depacote. He told me to see him the following week to report how the Depacote was reacting.

After four days, I had to quit taking the Depacote because it aggrivated my Acid Reflux Disease. I saw Dr. Cox three days later and told him the side effect. He then said he was going to take me off of Depacote, and just see if my Prozac (for Depression) and my Seroquel (for Sleep) would also treat my Bi-Polar. I told him I was uncomfortable with this decision because I had gone thru extensive tests with Dr. Nelson Handel, a psychiatrist in Dothan, to determine what medicine I needed for my three symptoms, and I have been on the medicine three years prior to being incarcerated. And now Dr. Cox, a GP, wants to experiment with me and see if I can function with nothing to treat Bi-Polar.

I asked Dr. Cox to let me try Trilipto1. It's a new drug and an inmate I'm housed with has taken the Lithium and Depacote with the same side effects, and he said the Trilipto worked great. But Dr. Cox told me and quote, "it was too expensive, we can't afford it." I told him I was a Federal Inmate and that the U.S. Marshall Service was paying for my treatment, and he verified this with Nurse Singleton. Yet he insisted I go a week just to see what happens.

I wrote Nurse Singleton a Request, a few days later, asking to be put on something for B-Polar because I was having alot of mood swings. She scheduled me to see Dr. Cox a few days later. I told Dr. Cox to let me try Trilipto1

And for the second time he told me "NO," it was too expensive and that he couldn't help me any more, and when I got sent to Prison maybe they would put me on something. And today, I still have no medication, and I truly believe that if Mr. Conoley had come in person, things would be different.

Judge Fuller, we all have read my PSI report. And the first day my wife and I met Mr. Conoley in his office, he explained how he was <u>not</u> biassed, and that he reported the good and the bad. Yet when you read my PSI report, he gives me no consideration at all, not even for seeking the treatment I had found on my own. And he is always been against me in the court room, yet he is not biassed.

What I'm trying to show you, is that Mr. Conoley is biassed, he is for the Prosecution no doubt. And if he would have followed thru with your order to visit the jail to straighten out my medication, I would be on something by now. Yet, being that he is totally against me, coming to the jail was a low priority, and I'm still waiting for treatment. If I don't get any medicine this week, I may not be ready for court on the 26th.

Do you think that maybe Mr. Conoley could contact the jail again in person or by phone and do a follow up on my treatment? Thank You.

Sincerely,

Kevin L. Turner

## DRS. HIGHLEY & COX P.C.
440 Taylor Road Suite 3100
Montgomery, Alabama 36109
Telephone (334) 277-5900
Fax (334) 277-6049

August 10, 2005

Debbie Brewer
U.S. Marshall's Office

From:  Steven Smith, CRNP

RE:  Kevin Turner

Dear Madame:

I have seen Mr. Turner repeatedly over the past several weeks at sick call. He came to us with a diagnosis of Bipolar Disorder. He wanted to be taken off of Lithium because of diarrhea. I honored his request and replaced Lithium with Depakote. He returned and claimed Depakote caused indigestion. He asked that he be taken off Depakote and wanted to be placed on Trileptal, a seizure medicine. I was told that he had a pod-mate who was on Trileptal and was able to sleep all of the time. I denied his request. He is currently on two psychotrophic medications, Depakote which is indicated for Bipolar disorder and Prozac for depression. He is reported to have normal behavior on observation in the pod on this current medication regimen.

Sincerely,

Steven M. Smith, CRNP                    Harold W. Cox, M.D.

SMS/ng

EXHIBIT
E

David,                              8-11-05

On 7-11-05 Kevin Turner requested to discontinue his Lithium. He was started on Depakote. On 8-1-05 Kevin Turner requested to discontinue his Depakote. See all attached request forms. Call me if you have any questions.

S. Singleton RN

## ELMORE COUNTY JAIL INMATE REQUEST FORM

NAME (PRINT) _Kevin Turner_ CELL _C_ DATE _8-4-25_

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW.  GIVE THIS FORM TO ANY JAIL OFFIC

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS.  IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK.  IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUE
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQ
WILL BE DISCARDED.

INMATE REQUEST: _Dr Cox, Please help me. Since I've gotten_
_off (Ativan) I've very Anxious and agitated. I get_
_angry and stay Angry at everything. I have a knot_
_in my stomach like something bad is going happen._
_Sometimes I cry and shake. I need something.→_

**DO NOT WRITE BELOW THIS LINE**          **DO NOT WRITE ON BACK OF THIS FOR**

REPLY: _8/5/05  (Denied S) (at this time.)_
_Singleton_

JAIL ADMINISTRATOR OR DESIGNEE _____ DATE _____

FORWARDED TO:
( ) INMATE
( ) INMATE FILE          ( ) TRUSTY OFF
( ) SHERIFF              ( ) EXP/SUPP OFF          ( ) PHYSICIAN
( ) WARDEN               ( ) NOTARY OFF _____     ( ) NURSE
( ) LT                   ( ) PX OFF _____         ( ) MED OFF
( ) SGT _____           ( ) MAINT OFF             ( ) CHAPLAIN
( ) SPV _____           ( ) PROGRAMS OFF          ( ) STEWARD
( ) CO _____                                      ( ) OTHER _____

ANY OFFICER TO WHOM THIS FORM IS FORWARDED WILL
WRITE THE DISPOSITION IN THE REPLY SECTION AND
RETURN FORM TO JAIL ADMINISTRATOR.

## ELMORE COUNTY JAIL INMATE REQUEST FORM

NAME (PRINT) Kevin Turner        CELL C/2   DATE 8-1-05

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW.   GIVE THIS FORM TO ANY JAIL OFFIC

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS.   IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK.   IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUE
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQ!
WILL BE DISCARDED.

INMATE REQUEST: I need to see Dr. Cox. The Depacote he put
me on for Bi-Polar gives me severe heartburn no matter
what I eat. I quit taking the Depacote on 7-28-05.
My Heartburn is gone now. Please put me on "Trileptal"
I'm A Federal inmate, they can afford it. Thank You Kevin Turner
**DO NOT WRITE BELOW THIS LINE**        **DO NOT WRITE ON BACK OF THIS FOI**

REPLY: _____

_____

_____

_____

JAIL ADMINISTRATOR OR DESIGNEE _____ Brown _____   DATE 8/1

FORWARDED TO:
( ) INMATE              ( ) TRUSTY OFF
( ) INMATE FILE         ( ) EXP/SUPP OFF          (✓) PHYSICIAN
( ) SHERIFF             ( ) NOTARY OFF            ( ) NURSE
( ) WARDEN              ( ) PX OFF                ( ) MED OFF
( ) LT                  ( ) MAINT OFF             ( ) CHAPLAIN
( ) SGT                 ( ) PROGRAMS OFF          ( ) STEWARD
( ) SPV                                           ( ) OTHER
( ) CO          ANY OFFICER TO WHOM THIS FORM IS FORWARDED WILL
                WRITE THE DISPOSITION IN THE REPLY SECTION AND
                RETURN FORM TO JAIL ADMINISTRATOR.

900

## ELMORE COUNTY JAIL INMATE REQUEST FORM

*flu*

NAME (PRINT) ___Kevin Turner___  CELL ___C___  DATE __8/1/05__

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW.   GIVE THIS FORM TO ANY JAIL OFFICE

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS.   IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK.   IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUE
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQU
WILL BE DISCARDED.

INMATE REQUEST: ___Reck___

_____

_____

_____

**DO NOT WRITE BELOW THIS LINE**          **DO NOT WRITE ON BACK OF THIS FOR**

REPLY: (S) _____ institional , needs fibr..
_____ cannot _____: cant take ___jepekta___
© 140/92
Ⓐ R ___
Ⓟ cont current meds
_____ Fiber cor # 5 am                     8/9/05

JAIL ADMINISTRATOR OR DESIGNER _____  DATE _____

FORWARDED TO:
( ) INMATE
( ) INMATE FILE      ( ) TRUSTY OFF
( ) SHERIFF          ( ) EXP/SUPP OFF _____    ( ) PHYSICIAN
( ) WARDEN           ( ) NOTARY OFF _____       ( ) NURSE
( ) LT               ( ) PX OFF                 ( ) MED OFF
( ) SGT              ( ) MAINT OFF              ( ) CHAPLAIN
( ) SPV _____        ( ) PROGRAMS OFF           ( ) STEWARD
( ) CO  _____                                   ( ) OTHER _____
                     ANY OFFICER TO WHOM THIS FORM IS FORWARDED WILL
                     WRITE THE DISPOSITION IN THE REPLY SECTION AND
                     RETURN FORM TO JAIL ADMINISTRATOR.

## ELMORE COUNTY JAIL INMATE REQUEST FORM

NAME (PRINT) _Kevin Turner_     CELL _C/D_   DATE _7-22-05_

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW. GIVE THIS FORM TO ANY JAIL OFFICE

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS. IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK. IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUES
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQU
WILL BE DISCARDED.

INMATE REQUEST: _Nurse, would you move my 6 pm medication to_
_9 pm. Taking my Seroquel at 6 and trying to go to sleep before_
_9 pm lockdown isn't working well for me at all, too much commotion_
_going on in the POD. Taking the medication at bedtime would_
_be more appropriate._     _Thank you Kevin Turner_

**DO NOT WRITE BELOW THIS LINE**     **DO NOT WRITE ON BACK OF THIS FORM**

REPLY: _Done. See MAR DE, RN 7/22/05_

JAIL ADMINISTRATOR OR DESIGNEE _____ DATE _____

FORWARDED TO:
( ) INMATE
( ) INMATE FILE    ( ) TRUSTY OFF
( ) SHERIFF       ( ) EXP/SUPP OFF _____    ( ) PHYSICIAN
( ) WARDEN       ( ) NOTARY OFF _____     ( ) NURSE
( ) LT           ( ) PX OFF _____       ( ) MED OFF
( ) SGT _____    ( ) MAINT OFF _____    ( ) CHAPLAIN
( ) SPV _____     ( ) PROGRAMS OFF _____   ( ) STEWARD
( ) CO _____                               ( ) OTHER _____

**ANY OFFICER TO WHOM THIS FORM IS FORWARDED WILL
WRITE THE DISPOSITION IN THE REPLY SECTION AND
RETURN FORM TO JAIL ADMINISTRATOR.**

Case 1:07-cv-00863-MEF-WC Document 8-6 Filed 11/13/2007 Page 7 of 13

## ELMORE COUNTY JAIL INMATE REQUEST FORM

NAME (PRINT) _Kevin Turner_ CELL _C-I_ DATE _7-11-05_

USE ONE FORM PER REQUEST
BRIEFLY OUTLINE YOUR REQUEST BELOW. GIVE THIS FORM TO ANY JAIL OFFIC

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS. IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK. IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUE:
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQU
WILL BE DISCARDED.

INMATE REQUEST: _I need to see Dr. Cox about my medication. I am having severe side effects._

DO NOT WRITE BELOW THIS LINE PLN   DO NOT WRITE ON BACK OF THIS FOR

REPLY: _(5) Wants off Xelthin B/c diarrhea_
_(0) 120/78  ⊖ BS 2gt NT/ND_
_(A) ? ↑ Zoloft_
_(P) (1) Taper off Zoloft B/c Zoloft_
_(2) Depakote 250mg  #60  (po BID)_

JAIL ADMINISTRATOR OR DESIGNER _Brim_ DATE _7/1/_

FORWARDED TO:
( ) INMATE
( ) INMATE FILE        ( ) TRUSTY OFF ____
( ) SHERIFF            ( ) EXP/SUPP OFF ____   (✓) PHYSICIAN
( ) WARDEN             ( ) NOTARY OFF ____     ( ) NURSE
( ) LT                 ( ) PX OFF ____         ( ) MED OFF
( ) SGT                ( ) MAINT OFF ____      ( ) CHAPLAIN
( ) SPV ____           ( ) PROGRAMS OFF ____   ( ) STEWARD
( ) CO ____                                    ( ) OTHER ____

ANY OFFICER TO WHOM THIS FORM IS FORWARDED WILL
WRITE THE DISPOSITION IN THE REPLY SECTION AND
RETURN FORM TO JAIL ADMINISTRATOR.

## ELMORE COUNTY JAIL INMATE REQUEST FORM

NAME (PRINT) _Kevin Turner_          CELL _C-1_   DATE _6-16-05_

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW.  GIVE THIS FORM TO ANY JAIL OFFICER.

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS.  IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK.  IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUEST
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQUES
WILL BE DISCARDED.

INMATE REQUEST: _Nure, will you put me on a regular Dosage of Diamod_
_or some other Anti-Diarrhea medicine. The Lithium I take keeps_
_me irregular and I wipe so much that I Bleed. If you can put_
_some on the Medication Cart, I will only ask for it when I need_
_it. Usually 3 dosages would keep me Regular for a whole week_
**DO NOT WRITE BELOW THIS LINE**          **DO NOT WRITE ON BACK OF THIS FORM**

REPLY: _Tucks to inmate. Anti diarrheal in cart. DE RN 6/17/05_

_____

_____

_____

_____

JAIL ADMINISTRATOR OR DESIGNEE _____   DATE _____

FORWARDED TO:
( ) INMATE
( ) INMATE FILE        ( ) TRUSTY OFF           ( ) PHYSICIAN
( ) SHERIFF            ( ) EXP/SUPP OFF _____  ( ) NURSE
( ) WARDEN             ( ) NOTARY OFF _____  ( ) MED OFF
( ) LT                 ( ) PX OFF               ( ) CHAPLAIN
( ) SGT _____         ( ) MAINT OFF _____    ( ) STEWARD
( ) SPV _____         ( ) PROGRAMS OFF         ( ) OTHER _____
( ) CO _____         **ANY OFFICER TO WHOM THIS FORM IS FORWARDED WILL**
                       **WRITE THE DISPOSITION IN THE REPLY SECTION AND**
                       **RETURN FORM TO JAIL ADMINISTRATOR.**

## ELMORE COUNTY JAIL INMATE REQUEST FORM

NAME (PRINT) _Kevin Turner_     CELL _5/15_   DATE _5-19-05_

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW.   GIVE THIS FORM TO ANY JAIL OFFICE

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS.   IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK.   IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUES
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQU
WILL BE DISCARDED.

INMATE REQUEST: _Dr. Cox, please read Reverse side._

---

**DO NOT WRITE BELOW THIS LINE**                    **DO NOT WRITE ON BACK OF THIS FOR**

REPLY: ⓢ (want) to ↑ Seroquel 100 mg for _frustine?_
frequent BM's from Lithium
Ⓒ //
Ⓐ //
① D/C ↑ Seroquel to 200 mg HS
② note to JN for Saltive T.D.

JAIL ADMINISTRATOR OR DESIGNEE _Bum_     DATE _5-23_

FORWARDED TO:
( ) INMATE
( ) INMATE FILE        ( ) TRUSTY OFF
( ) SHERIFF            ( ) EXP/SUPP OFF _____        ( ) PHYSICIAN
( ) WARDEN             ( ) NOTARY OFF _____          (✓) NURSE
( ) LT                ( ) PX OFF _____              ( ) MED OFF
( ) SGT _____         ( ) MAINT OFF _____           ( ) CHAPLAIN
( ) SPV _____         ( ) PROGRAMS OFF _____        ( ) STEWARD
( ) CO _____                                        ( ) OTHER _____

ANY OFFICER TO WHOM THIS FORM IS FORWARDED WILL
WRITE THE DISPOSITION IN THE REPLY SECTION AND
RETURN FORM TO JAIL ADMINISTRATOR.

*Request Form*

TO: NURSE
FROM: Kevin Turner          POD 5 / cell 6          4-18-05

1st I need to see the Doctor for 3 different reasons.
1st I have a problem under my arm pit that Dr. Mendez
at Mont. city was supposed to help me with this.

2nd I have had 2 back surgeries. I need an extra Blanket
to put between my knees to ~~refer~~ relieve the pressure which
is the only way I can sleep.

3rd I currently weigh 270 and would like an extra Mattress
if at all possible. It's also for my back.

Lithium 600 BID
Prozac 40
Seroquel 100 xtd

Meds listed on no refill sheet.
Please order.
① Skin tags (axilla stays raw—
② wants extra mat B/C back surgery
③ wants mattress resumed

④ skin tags Many irritated several
* 28/52

⑤ Skin tags, XBP, Depression
⑥ ① Get him some deoderant
② Extra mat if available
③ Lithium 300 mg #90 5 p.o. TID
④ Prozac 40 mg #30 t30 g
⑤ Seroquel 100 mg #30 t30 g Suggest 2

## ELMORE COUNTY JAIL INMATE REQUEST FORM

NAME (PRINT) _Kevin Turner_     CELL _5/6_   DATE _5/2/05_

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW.   GIVE THIS FORM TO ANY JAIL OFFICE

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS. IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK. IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUES
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQUI
WILL BE DISCARDED.

INMATE REQUEST: _You omitted my Noon or Lunch medication As I Re-_
_quested, thank you. Although you did not increase my morning and_
_evening to make up the difference. I need 600mg of Lithium at_
_morning and evening like I was taking before I came here 2 weeks_
_ago. I Am Bi-Polar, My Lithium "cannot" be increased or →_
**DO NOT WRITE BELOW THIS LINE**     **DO NOT WRITE ON BACK OF THIS FORM**

REPLY: _(S) A_

_Dot Lithium 300 y to 2 Go BID_
_2 Lithium level in 2 weeks_

JAIL ADMINISTRATOR OR DESIGNEE _Brown_   DATE _5/_
FORWARDED TO: _(3) Cont Seroquel 100 mg @ HS_     _5/2/05_

| | | |
|---|---|---|
| ( ) INMATE | ( ) TRUSTY OFF | ( ) PHYSICIAN |
| ( ) INMATE FILE | ( ) EXP/SUPP OFF | (✓) NURSE |
| ( ) SHERIFF | ( ) NOTARY OFF | ( ) MED OFF |
| ( ) WARDEN | ( ) PX OFF | ( ) CHAPLAIN |
| ( ) LT | ( ) MAINT OFF | ( ) STEWARD |
| ( ) SGT | ( ) PROGRAMS OFF | ( ) OTHER |
| ( ) SPV | | |
| ( ) CO | | |

**ANY OFFICER TO WHOM THIS FORM IS FOWARDED WILL
WRITE THE DISPOSITION IN THE REPLY SECTION AND
RETURN FORM TO JAIL ADMINISTRATOR.**

## ELMORE COUNTY JAIL INMATE REQUEST FORM

NAME (PRINT) _Kevin Turner_    CELL _5/6_   DATE _4-25-05_

**USE ONE FORM PER REQUEST**
BRIEFLY OUTLINE YOUR REQUEST BELOW.   GIVE THIS FORM TO ANY JAIL OFFICER

READ YOUR INMATE HANDBOOK BEFORE MAKING REQUESTS. IN MANY CASES, YOUR
QUESTIONS OR CONCERNS WILL BE ANSWERED IN THE HANDBOOK.

IN SOME CASES, YOU WILL NOT RECEIVE A COPY OF THIS FORM BACK. IN THAT
CASE, IT WAS FORWARDED DIRECTLY TO WHOMEVER CAN HELP YOU, OR THE REQUEST
REQUIRED NO FURTHER ACTION.

YOUR REQUEST WILL NOT BE FORWARDED TO ANYONE OUTSIDE THIS FACILITY.

DUPLICATE REQUESTS, REQUESTS IN THE FORM OF PETITIONS, OR UNSIGNED REQUE
WILL BE DISCARDED.

INMATE REQUEST: _When I saw the Doctor last week I asked to have my_
_Seroquel increased to "2 tablets" OR (200mg) because I absolutely cannot_
_sleep. Instead, my Lithium was changed to 3 dosages per day instead of 2. I_
_want my lithium at breakfast and evening. (Nothing at Lunch) I am on this_
_medication because I am Bi-Polar. Please help me fix this. Thank You._

**DO NOT WRITE BELOW THIS LINE**    **DO NOT WRITE ON BACK OF THIS FORM**

REPLY: _____

_____

_____

_℞: Change lithium to BID_    ; _4/26/05_

JAIL ADMINISTRATOR OR DESIGNEE _Brunner_ DATE _425_

FORWARDED TO:
( ) INMATE       ( ) TRUSTY OFF
( ) INMATE FILE    ( ) EXP/SUPP OFF      (✓) PHYSICIAN
( ) SHERIFF      ( ) NOTARY OFF _____ ( ) NURSE
( ) WARDEN       ( ) PX OFF        ( ) MED OFF
( ) LT          ( ) MAINT OFF _____ ( ) CHAPLAIN
( ) SGT _____    ( ) PROGRAMS OFF    ( ) STEWARD
( ) SPV _____                          ( ) OTHER _____
( ) CO _____

ANY OFFICER TO WHOM THIS FORM IS FOWARDED WILL
WRITE THE DISPOSITION IN THE REPLY SECTION AND
RETURN FORM TO JAIL ADMINISTRATOR.

Dear Dr. Cox,                                                              5

I saw you on Tuesday 17th and asked what was the reason for denying my previous three requests to increase my Seroquel dosage so that I can sleep.

You told me the reason was because "everyone" wants their Seroquel increased in jail so they can sleep all day.

Dr. Cox, I am just trying to get six to eight hours at night. Would you please review my situation and medical history on an individual basis?

I understand where you're coming from, as probably all your patients try to beat you out of some drug. But I assure you sir that I am not one of them. My other two prescriptions have been increased in the last year. Nothing I'm taking is Narcotic. I don't know if it's the Lithium or Prozac that keeps me going, but if I can't get my sleep medication increased, I will have to stop taking my other medication.

Insomnia, Sleep Deprivation, whatever you want to call it, is very exhausting and probably not healthy. I don't know what's worse, the lack of sleep, or the depression which will come back when the drugs clear out of my system.

I didn't have any problems before incarceration because my Doctor cared and took care of me. But now I'm denied proper treatment because of a decision you made based on "everyone else." This type of decision is unethical and needs to be addressed.

Dr. Cox, I know of only one correct way to solve my sleep issue, and that is to increase my Seroquel. If I quit taking my other meds, depression and mood swings will start back so that isn't the cure.

You're a Doctor and I'm in need of medical attention. Will you please help me?

                                            Regards,
                                            Kevin Turner

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHTERN DIVISION

UNITED STATES OF AMERICA    )
                                 )
                                 )
V.                                )    CASE NO. 1:03-cr-219-F
                                 )
                                 )
KEVIN TURNER                 )

### AFFIDAVIT OF MARK JOHNSON

STATE OF ALABAMA

COUNTY OF HOUSTON

Before me, the undersigned authority, personally appeared MARK JOHNSON who is known to me, and after being duly sworn according to the law did depose and state as follows:

On August 23, 2005 I went to the Elmore County Jail to see Kevin Turner and to determine what kind of medication if any he was currently receiving to treat his Bipolar condition.

Upon arrival I asked to speak with the jail nurse and I was directed to the nursing office. The nurse on duty was C. McLaughlin RN. Nurse McLaughlin looked in Kevin's medical record and then told me that she needed to get clearance from a nurse Singleton prior to releasing any information to me. Nurse Singleton was located on her cell phone and she asked to speak to me. Nurse Singleton informed me that she was familiar with Kevin's case and that he was not at the present time being given Lithium or Depakote. As of August 1, 2005 his prescription for Depakote was canceled by Steven Smith, CRNP. Nurse Singleton advised me that Kevin's condition was being treated with Seroquel and prozac and that those drugs were adequate to treat his disorder.

I asked nurse Singleton why Steven Smith CRNP and Harold Cox M.D. had sent a letter to the Marshall's office on August 10, 2005 stating that Kevin was currently taking Depakote for his Bipolar disorder and Prozac for depression. Nurse Singleton replied that she was aware of the letter and had a copy in her file, but that the indication stating Kevin was currently on Depakote was a mistake and


EXHIBIT
F

should have read Seroquel and Prozac.  This decision was apparently made by Steven Smith, a nurse practitioner, and not Dr. Cox.  Nurse Singleton also stated that the Seroquel was not a new treatment but a drug that Kevin had been on all along and had taken in addition to the Lithium and the Depakote.

I also spoke with Kevin Turner and he said that he merely wanted to try other types of medicine to see if the upset stomach issues that occurred with the Lithium and Depakote could be eliminated. However he would rather be back on the Lithium and deal with the upset stomach than nothing at all.

Dated this the 25th day of August, 2005

MARK JOHNSON

STATE OF ALABAMA
COUNTY OF HOUSTON

I, the undersigned authority, a Notary Public, in and for the said County and State, hereby certify that MARK JOHNSON, whose acknowledged before me this day, that being informed of the contents of this AFFIDAVIT, he executed the same voluntarily on the date the same bears date.

Given under my hand and seal this the __25th__ of AUGUST, 2005.

_Tracie Sue Brazier_
NOTARY PUBLIC

My Commission Exp : 7-9-08

**Dothan Behavioral Medicine Clinic**
Nelson M. Handal, M.D.
Jerlyn McCleod, M.D.
101 Medical Drive
Dothan, Alabama 36303
(334) 702-7222

## PROGRESS NOTE

| | |
|---|---|
| **Patient Name:** | **Kevin Turner** |
| **Patient Number:** | 2373 |
| **Date:** | 12/03/03 |

Patient presents today for evaluation and management. Patient is present with his attorney, Jim Parkman. He states that patient has been charged with child pornography. Patient pled guilty to charges and "will do some time", per Mr. Parkman. Mr. Parkman was inquisitive about the treatment for sexual addiction. Mr. Parkman asked if the current medication treatment is used to treat the patient's desire for pornography and sexual desires. Mr. Parkman was informed the current medication was "indirectly" used to treat such behaviors. Mr. Parkman also asked if the use of illicit drugs could exacerbate symptoms associated with mania. Mr. Parkman was informed the use of drugs could exacerbate mania. Therefore, drug use treatment could assist with decreasing the impulsivity or mania episodes. Mr. Parkman requests a letter outlining recommendations to the courts.

The patient is reportedly sleeping well. Appetite is good per patient. The patient is cooperative, alert, and awake during evaluation. Patient denies feeling depressed or suicidal at this time. No medication side effects reported per patient. The patient denies having H/A, palpitations, vomiting, tics, rash, hallucinations, constipation, dry mouth, cramps, dizziness, agitation, EPS, sedation, diarrhea, blurred vision, insomnia, lack of appetite or symptoms associated with mood instability, irritability, or anger. Patient is much improved and appears to benefit from current treatment regimen. Will continue treatment under the same protocol.

REVIEW OF SYSTEMS:
Constitutional: Negative
Eyes: Negative
Ears, Nose, Mouth, Throat: Negative
Cardiovascular: Negative
Respiratory: Negative
Gastrointestinal: Negative
Genitourinary: Negative
Musculoskeletal: Negative
Skin and/or breasts: Negative
Neurological: Negative
Endocrine: Negative
Hematologic/Lymphatic: Negative
Allergic/Immunologic: Negative

EXHIBIT
G

CONFIDENTIAL

Kevin Turner

DIAGNOSIS:
AXIS I:      1. Bipolar Disorder, Type II, Mixed
             2. Generalized Anxiety Disorder
AXIS II:     Deferred
AXIS III:    Back problems
AXIS IV:     5, legal implications associated with child pornography
AXIS V:      Current GAF 60

RECOMMENDATIONS:
1. Continue Lithium 900 mg qam
2. Continue Prozac 40 mg qd
3. Continue Seroquel 100 mg 1t abs qhs
4. Return in one week for a Lithium level, BUN, creatinine
5. Provide Mr. James Parkman, Attorney at Law-739 West Main Street, Dothan, Alabama 36301 with recommendations for treatment while incarcerated. Requesting information, patient does not require constant supervision while incarcerated. He is employed and sought treatment for Bipolar Disorder after allegations occurred.
6. Return to clinic in 3 months


_____
NELSON M. HANDAL, M.D.
Diplomate of the American Board
of Psychiatry and Neurology

CONFIDENTIAL

**Dothan Behavioral Medicine Clinic**
Nelson M. Handal, M.D.
Jerlyn McCleod, M.D.
101 Medical Drive
Dothan, Alabama 36303
(334) 702-7222

## PROGRESS NOTE

| | |
|---|---|
| **Patient Name:** | **Kevin Turner** |
| **Patient Number:** | **2373** |
| **Date:** | **03/18/04** |

The patient's wife came to talk about the patient's medication treatment. She reports that the patient is in jail and was moved to the county jail in Montgomery by U.S. Marshals about two weeks ago. Wife said that the patient has been charged with "violent crimes" and this past Tuesday had a detention hearing and was told "he is a danger to society and a threat" and the trial process has to be restarted and has been sent to the magistrate again. Wife said "these violent charges are new and we did not know about them". The patient's wife is requesting records and is concerned about medication management for the patient while he is jail. According to our files, the patient and his lawyer have been provided with medical records.

His wife reports that the patient has benefited from his current medication regimen and that he has been stable.

DIAGNOSIS:
| | |
|---|---|
| AXIS I: | Bipolar Disorder, Type II, Mixed |
| | Generalized Anxiety Disorder |
| AXIS II: | Deferred |
| AXIS III: | Back problems |
| AXIS IV: | 5, legal implications associated with child pornography |
| AXIS V: | Current GAF 60 |

RECOMMENDATIONS:
1. Continue Lithium 900 mg qam
2. Continue Prozac 40 mg qd
3. Continue Seroquel 100 mg 1t abs qhs
4. Return in one week for a Lithium level, BUN, creatinine
5. Return to clinic in 3 months

_____
NELSON M. HANDAL, M.D.
Diplomate of the American Board
of Psychiatry and Neurology


CONFIDENTIAL

**Dothan Behavioral Medicine Clinic**
Nelson M. Handal, M.D.
Jerlyn McCleod, M.D.
101 Medical Drive
Dothan, Alabama 36303
(334) 702-7222

## PROGRESS NOTE

| | |
|---|---|
| **Patient Name:** | **Kevin Turner** |
| **Patient Number:** | 2373 |
| **Date:** | 10/14/03 |

Patient presents today for evaluation and management. Patient sates that he has been arrested by the FBI and that he has 7 felony counts associated with sexual issues and minors. He has a court date on December the 8th and his attorney is Jim Parkman. The patient stated, "I do not have the sexual deviant thoughts I had before, the medicine has helped me, I do not feel like that anymore I do not have a sexual drive". The patient is reportedly sleeping well. Appetite is good per patient. The patient is cooperative, alert, and awake during evaluation. Patient states he feels depressed because of the "situation". Denies suicidal ideations at this time. No medication side effects reported per patient. The patient denies having H/A, palpitations, vomiting, tics, rash, hallucinations, constipation, dry mouth, cramps, dizziness, agitation, EPS, sedation, diarrhea, blurred vision, insomnia, lack of appetite or symptoms associated with mood instability, irritability, or anger. Patient is much improved and appears to benefit from current treatment regimen. Will continue treatment under the same protocol.

REVIEW OF SYSTEMS:
Constitutional: Negative
Eyes: Negative
Ears, Nose, Mouth, Throat: Negative
Cardiovascular: Negative
Respiratory: Negative
Gastrointestinal: Negative
Genitourinary: Negative
Musculoskeletal: Negative
Skin and/or breasts: Negative
Neurological: Negative
Endocrine: Negative
Hematologic/Lymphatic: Negative
Allergic/Immunologic: Negative

RECOMMENDATIONS:
1. Continue Lithium 900 mg qam
2. Continue Prozac 40 mg qd
3. Continue Seroquel 100 mg 1tabs qhs
4. Return in one week for a Lithium level, BUN, creatinine

CONFIDENTIAL

Kevin Turner

Page 2

5. Return to clinic in 3 months
6. Encouraged patient to see Rose Blake

DIAGNOSIS:
AXIS I:        1. Bipolar Disorder, Type II, Mixed
               2. Generalized Anxiety Disorder
AXIS II:       Deferred
AXIS III:      Back problems
AXIS IV:       5, legal implications associated with child pornography
AXIS V:        Current GAF 60



_____
NELSON M. HANDAL, M.D.
Diplomate of the American Board
of Psychiatry and Neurology

CONFIDENTIAL

## Dothan Behavioral Medicine Clinic
Nelson M. Handal, M.D.
Jerlyn McCleod, M.D.
101 Medical Drive
Dothan, Alabama 36303
(334) 702-7222

## PROGRESS NOTE

**Patient Name:**     Kevin Turner
**Patient Number:**   2373
**Date:**             07/16/03

---

Patient presents today for evaluation and management. He states that he is functioning well. The patient is reportedly sleeping well. Appetite is good per patient. The patient is cooperative, alert, and awake during evaluation. Patient denies feeling depressed or suicidal at this time. No medication side effects reported per mother. The patient denies having H/A, palpitations, vomiting, tics, rash, hallucinations, constipation, dry mouth, cramps, dizziness, agitation, EPS, sedation, diarrhea, blurred vision, insomnia, lack of appetite or symptoms associated with mood instability, irritability, or anger. Patient is much improved and appears to benefit from current treatment regimen. Will continue treatment under the same protocol.

REVIEW OF SYSTEMS:
Constitutional: Negative
Eyes: Negative
Ears, Nose, Mouth, Throat: Negative
Cardiovascular: Negative
Respiratory: Negative
Gastrointestinal: Negative
Genitourinary: Negative
Musculoskeletal: Negative
Skin and/or breasts: Negative
Neurological: Negative
Endocrine: Negative
Hematologic/Lymphatic: Negative
Allergic/Immunologic: Negative

RECOMMENDATIONS:
1. Continue Lithium 300 mg TID
2. Continue Prozac 40 mg qd
3. Continue Seroquel 100 mg 1-2 tabs qhs
4. Return in one week for a Lithium level, BUN, creatinine
5. Return to clinic in 3 months

DIAGNOSIS:
AXIS I:      1. Bipolar Disorder, Type II, Mixed



Kevin Turner                                                                                     Page 2

|           | 2. Generalized Anxiety Disorder                              |
|-----------|-------------------------------------------------------------|
| AXIS II:  | Deferred                                                     |
| AXIS III: | Back problems                                               |
| AXIS IV:  | 5, legal implications associated with child pornography     |
| AXIS V:   | Current GAF 60                                               |

_____
NELSON M. HANDAL, M.D.
Diplomate of the American Board
of Psychiatry and Neurology

CONFIDENTIAL

Dear Jim,                                                    8-29-05

A couple more questions. When we made the
original or actually the 2nd Plea, he turned
the original 5 yr Plea down remember. Anyway, we
made the 2nd Plea according to the current PSI
we were looking at. It didn't have Crosley's
Upward Departures at the time of the Plea a year
ago. He just kept adding to it and my plea
was never changed or updated. He wasn't asking
for 300 months at the Plea date. It took so
long to get me sentenced, and so many things
happened during that time for example, there have
been some horrible child molestation cases lately,
just a week ago a 6 year old girl was raped by
a 50 year old black man in Prattville. And the
State of Al. is trying to pass new laws which even
include castration of a Class A Felony of child
rape or molestation type charges. All this is happening
while I'm waiting for sentencing and I believe it had
a tremendous effect on my sentence. Fuller hasn't
been "fair" for lack of a better word, to me since
the beginning. Jesus Jim, if I was pleading to
30 years, we should've gone to trial. I know you
weren't expecting 300 months either, so I'm not at
all blaming you, I feel that they had an agenda
and they knew they could manipulate the Plea
Bargain. If at the Plea hearing Crosley had
told us he was going to ask for 300 months at
sentencing, we probably wouldn't have taken the

2

Plea, and Susan wouldn't have been happy cause she didn't want to go to trial any more than we did, so she would have struck a deal with Condy to not ask for 360 months and so on.

I'm just looking for some "hope", I'm sure you can imagine how I feel right now. I sure picked a bad time to get my medicine screwed up.

I did get to call Mary at 11:30 pm Friday night. Thank you for arranging that. I will be off lockdown in 2 more days.

Jim, with a 30 yr. sentence, will I still go to a Low Security, or will I have to go to a higher Security?

Will you send me copies of the appeal and whatever else you file so I will have something to look at for some "hope". I need something, anything. I don't know my reasons for appeal but you said there were 4 things. I'd like to know what they were. I didn't realize that Fuller enhanced me so much cause I was in a Daze, do you remember his reasons. I know one was he said a Heinous crime, I don't know how to spell that. → I don't remember much else. I remember him saying Level 40 so he enhanced 8 levels.

✗    Something I read on that Westlaw about Distribution that was interesting, if I remember correctly it said that if one of the crimes was "Distribution", that alone added to your offence level, and then to enhance an additional 5

Distribution for pecuniary or non-pecuniary gain was "double charging" or something. like that. Mary has the papers that I made notes on.

That sounds like a good argument doesn't it? I think you gave those Westlaw documents to Mary so you have a copy. I will ask her for the details as soon as I can call her, then I will get her to leave a message for you as to which one it was.

Something else Jim, ▓ since Cooley sent that letter I wrote (remember the filthy letter to J. Spurlock) to Fuller, which that letter had nothing to do with this case, don't you think that also had a lot to do with Fuller's decision. There was nothing illegal about the letter although yes it was rather distasteful and I am ashamed that I did that.

Thanks again for everything.

Karen